279 F.Supp. 820 (1968)
In the Matter of James Kendall CLANCY, Bankrupt.
The FIRST NATIONAL BANK OF COLORADO SPRINGS, Petitioner on Review,
v.
James Kendall CLANCY, Bankrupt, Respondent on Review.
No. 67-B-976.
United States District Court D. Colorado.
February 21, 1968.
*821 Haney, Hewbert & Akers, Byron L. Akers, Jr., Colorado Springs, Colo., for petitioner on review.
Rodden, Cooper, Woods & Mitchell, Paul B. Rodden and Thomas J. Mitchell, Denver, Colo., for respondent on review.

MEMORANDUM OPINION AND ORDER
WILLIAM E. DOYLE, District Judge.
James Kendall Clancy filed a voluntary petition in bankruptcy on March 10, 1967. Objections to the bankrupt's discharge were filed by The First National Bank of Colorado Springs on the ground that the bankrupt had obtained a business loan from the bank by making a materially false financial statement within the terms of Section 14c(3) of the Bankruptcy Act.[1] Referee Matsch overruled this objection in an opinion and order dated December 19, 1967. The case is before the Court on the bank's petition for review.
The facts in this case are not in substantial conflict. In its petition for review, the bank contends that the Referee drew unreasonable inferences from the facts and misapplied the law. On a review such as this the referee's inferences and findings of fact stand unless clearly erroneous. See, e. g., In re Zidoff (7th Cir. 1962), 309 F.2d 417; and In re Knapp (2nd Cir. 1962), 309 F.2d 479. See also, 1 Collier on Bankruptcy ¶ 14.65 (1967).
The bankrupt admits that he acquired an unsecured, short-term loan of $16,000.00 from the bank on February 6, 1967, and that in connection with this loan he submitted to the bank a financial statement showing that he and his wife had a combined net worth of $2,119,800.00, with total assets of $2,188,800.00 and total liabilities of $69,000.00. This statement failed to show outstanding liabilities in the amount of $150,000.00. The correct combined net worth was actually $1,969,800.00. The financial statement failed to disclose that most *822 of the assets on this financial statement belonged to his wife, and that at the time of the loan he was insolvent with debts of $210,000.00 and assets of $80,000.00.
The bank contends that it would not have made the loan if the financial statement had shown the bankrupt's insolvency or the correct amount of liabilities, and that the bankrupt is therefore guilty of obtaining the loan by virtue of a false statement of credit within the meaning of Section 14c(3) of the Bankruptcy Act.
The referee overruled the bank's objection, citing a number of reasons. First, he found that the submission of a combined financial statement was not deceitful, since the statement was clearly marked "Mr. & Mrs. James Kendall Clancy." Second, that the omission of $150,000.00 in liabilities from the financial statement was not an act of deceit by the bankrupt, since a corrected financial statement would have continued to show approximately $2,000,000.00 in net worth. Third, because the bank official involved was aware that bankrupt's wife was a wealthy woman. The referee thus found that the bank relied upon her wealth even though she did not join in signing the note. Fourth, the bank relied upon the bankrupt's promise to sell his Reichold Chemical stock and repay the loan with the proceeds, since this promise was investigated while other sources of credit were not. Finally, the referee concluded that the bank's failure to inquire into the bankrupt's individual ownership beyond the Reichold Chemical stock demonstrated a lack of reliance on the financial statement as a whole.
The crucial findings of the referee are first, that the misrepresentation was not intentional, and secondly, that there was no reliance by the bank on the misstatement. We disagree with both of these. The overwhelming weight of the evidence requires different findings.
It strains the evidence to say that the deception was not intentional. Indeed, the referee found that "The evidence is clear that the bankrupt was fully aware of the debts which he did not disclose." Such a knowing representation is, of course, fraudulent. A.L.I. Restatement of Torts, Sec. 526. This was not, however, the full extent of the bankrupt's wrongdoing. Implicit in the submission of the combined balance sheet was the misrepresentation that the funds of his wife were fully available to him. If he had not wished to create such an impression, why mention her assets. The truth was that the bankrupt was then substantially insolvent and it was necessary to so depict. It follows that his knowledge of the falsity stemming from the nondisclosure of substantial liabilities, when coupled with his false representation that his fortunes were substantially in the black when in truth they were hopelessly in the red, was a palpably deceptive statement, not susceptible to an inference that he acted unintentionally.
The holding of non-reliance must also be overturned. The evidence precludes an inference that the misrepresentations were lacking in materiality. True, the bank seemed eager to make the loan, but it was due to the belief that it was a safe one. No prudent banker would have released the money had he known the true facts. The testimony is that the bank would not have made the loan had it not been misled. To be sure, the bank did put reliance on other factors such as the showing of family wealth plus the bankrupt's promise to sell the Reichold Chemical stock and appropriate the proceeds to payment of the loan (which also turned out false). But there need not have been sole reliance on the deceit. It is sufficient if this was a substantial factor in causing the loss. See A.L.I. Restatement of Torts, Sec. 546, and see 1 Collier on Bankruptcy, Sec. 1439 (14th Ed. 1967). Here it was at least that. Undoubtedly, the bank did rely on the family wealth of the bankrupt's wife, but this illfounded reliance was also induced by the deception of the bankrupt that he had access to this wealth.
The referee's conclusion of non-reliance was predicated on his finding *823 that the misrepresentation was nonintentional  that it was at most negligent. The referee thought the bank was negligent in failing to inquire into the bankrupt's ownership of the stock. Such contributory negligence would offset a negligent representation. But where as here, the misrepresentation is knowing and intentional, negligence of the victim is not germane. The question is whether there was justifiable reliance in fact. The proposition is summed up cogently in Prosser on Torts, 3rd Ed. p. 731:
"There have been cases in which it was said that such reliance is contributory negligence, and that the plaintiff must exercise the care of a reasonably prudent man for his own protection. Undoubtedly such language is appropriate, if the defendant's misrepresentation itself is merely negligent; but when there is an intent to mislead, it is clearly inconsistent with the general rule that mere negligence of the plaintiff is not a defense to an intentional tort. The better reasoned cases have rejected contributory negligence as a defense applicable to intentional deceit, taking account of the effect which the representation is intended to have upon the plaintiff's mind."
The bankrupt argues that at all times relevant to this suit he was not "engaged in business" within the meaning of Section 14c(3),[2] and that the referee therefore erred in holding him subject to the requirements of that section. However, we agree with the referee's decision that the bankrupt's full-time buying and selling of securities as the sole source of his earned income constituted engaging in business under the Act. With regard to this issue, we adopt the referee's opinion which reads, in part, as follows:
"[W]hat Congress has said is that the knowledgeable, sophisticated and aware person, experienced in commercial credit transactions, is to be held to a higher standard of disclosure of his affairs. That higher standard applies when he obtains credit for a commercial activity. It is not unreasonable to expect that a man who is daily engaged in the sophisticated and intricate activities of trading in securities should be expected to have adequate records of his affairs, to be aware of the consequences of a false financial statement and to be concerned with the standing of his credit in the community." Referee's Opinion and Order, p. 4.

* * *
In sum then, we hold that the referee was correct in ruling that the bankrupt was "engaged in business" within the meaning of Section 14c(3) of the Bankruptcy Act; but we hold that the referee erred 1. in finding that the bankrupt's failure to disclose $150,000.00 in outstanding debts and his submission of a combined financial statement did not constitute a materially false financial statement under the circumstances of this case; 2. in determining that this false statement of credit was not motivated by bankrupt's intent to deceive; and finally, in concluding that the false statement was not relied upon, at least in part, by the bank in making its loan to the bankrupt.
It is therefore ordered that the order of the referee be reversed; that petitioner be granted the relief sought under the specification of objections to discharge; and that the bankrupt, James Kendall Clancy, be denied a general discharge pursuant to Section 14c(3) of the Bankruptcy Act.
NOTES
[1] Section 14c(3) of the Bankruptcy Act, [11 U.S.C.A. § 32c(3) (Supp.1967)], provides that a complete discharge shall be granted unless the court is satisfied that the bankrupt has

"while engaged in business as a sole proprietor, partnership, or as an executive of a corporation, obtained for such business money or property on credit or as an extension or renewal of credit by making or publishing or causing to be made or published in any manner whatsoever a materially false statement in writing respecting his financial condition or the financial condition of such partnership or corporation."
[2] For the text of this Section, see footnote 1, supra.