In re Dennis Arthur JOYNER, Debtor.

ARKANSAS ALUMINUM ALLOYS, INC., Plaintiff,

v.

Dennis Arthur JOYNER, Defendant.

Nos. 89–10279, 90–1270–C.

Adv. No. 89–5189.

United States District Court, D. Kansas.

Sept. 10, 1991.

Steven L. Speth, Stinson, Lasswell & Wilson, Wichita, Kan., for debtor.

Richard D. Ewy, Foulston & Siefkin, Wichita, Kan., for plaintiff.

## MEMORANDUM AND ORDER

CROW, District Judge.

This case is an appeal from the an adversarial proceeding before the bankruptcy court. Dennis Arthur Joyner had issued a guaranty in favor of Arkansas Aluminum Alloys (Arkansas Aluminum) which guaranteed the debt of Midwest Diecast, Inc. (Midwest). Joyner owned twenty-four percent of Midwest's stock. Midwest Diecast defaulted; Arkansas Aluminum subsequently secured judgment against Joyner in Allen County, Kansas, District court in the amount of $74,611 plus interest. Joyner declared bankruptcy under Chapter 7.

Arkansas Aluminum opposed Joyner's discharge of the debt. At the conclusion of the adversarial proceeding, Judge Pearson held that Joyner's debt to Arkansas Aluminum was nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). Joyner appeals the decision of the bankruptcy court.

### Factual Overview

Many of the facts are undisputed. Joyner was the executive vice president of Midwest Diecast, Inc. Joyner owned twenty-four percent of the Midwest's stock. In July 1988, Midwest was interested in purchasing aluminum alloy on credit from Arkansas Aluminum. Midwest had entered into a large contract and needed a steady supplier of large amounts of aluminum. Midwest and Arkansas Aluminum had not previously done business.

Charles Spicer, a sales representative for Arkansas Aluminum made a personal visit to Midwest and toured Midwest's facility and operation. Spicer returned to Arkansas Aluminum and presented R.J. Wills, a credit manager with Arkansas Aluminum, with Midwest's credit application. After reviewing Midwest's application and inquiring into Midwest's trade references, Arkansas Aluminum declined to offer Midwest credit. Midwest, still desirous of purchasing aluminum from Arkansas Aluminum, submitted the personal financial statements of Joyner and Dr. Hicklin (another Midwest principal). Both Joyner and Hicklin also submitted personal guaranties in favor of Arkansas Aluminum.

Joyner's financial statement was dated January 26, 1988; his personal guaranty was dated July 15, 1988. Joyner's financial statement listed assets in the amount of

$682,750. In the section listing contingent liabilities, Joyner indicated that there were none. On the second page of the financial statement, the following appears:

> In the absence of written notice to you a materially unfavorable condition or in the facts stated therein, or of a new or amended written statement filed with you, this statement may be considered a continuing statement and substantially correct, and upon application for further credit, this statement shall have the same force and effect of my financial statement of my financial condition at the time such further credit is requested.

> \* \* \* \* \* \*

> Being of lawful age and first duly sworn, I state: That I have read both sides of the foregoing financial statement, that the information contained therein is true and correct, and that it constitutes a true and accurate account and statement of my financial condition as of the date thereof; that I will immediately notify you in writing of any material unfavorable change in my financial statement or in the facts stated therein; ...

At the time Joyner submitted his financial statement to Arkansas Aluminum, Joyner did not indicate that any unfavorable changes had occurred in his financial condition. However, in the months between the time that the financial statement was prepared and the time it was sent to Arkansas Aluminum, several events, mostly unfavorable, had occurred. In fact, contingent liabilities in excess of $1,000,000 existed which were not listed in Joyner's financial statement.

Arkansas Aluminum shipped two loads of aluminum. Midwest did not pay for the shipments. Midwest is now defunct. Joyner was unable to pay the guaranty. Arkansas Aluminum subsequently obtained judgment against Joyner in the amount of $74,611 plus interest.

Joyner declared bankruptcy under Chapter 7. Arkansas Aluminum opposed discharge of Joyner's debt pursuant to 11 U.S.C. § 523(a)(2)(B).

After conducting a hearing, the bankruptcy court concluded that Joyner's debt was not dischargeable pursuant to § 523(a)(2)(B). Joyner timely appeals.

## Standard of Review

On appeal from the bankruptcy court, the district court sits as an appellate court. *See* 28 U.S.C. § 1334(a). Findings of fact are not to be set aside unless clearly erroneous; conclusions of law are reviewed *de novo*. *Virginia Beach Federal Sav. and Loan Ass'n v. Wood*, 901 F.2d 849, 851 (10th Cir.1990); *In re Schneider*, 864 F.2d 683, 865 (10th Cir.1988); *see* Bankruptcy Rules 7052 and 8013. "Just as the court of appeals may not conduct an evidentiary hearing for a bankruptcy appeal, so too a district court may not conduct such hearing when it is acting in its capacity as an appellate court. In a bankruptcy appeal, a district court may alter or amend its judgment pursuant to Fed.R.Civ.P. 59(e), but may not conduct a hearing to take additional testimony or other evidence." *In re Branding Iron Motel, Inc.*, 798 F.2d 396, 399 (10th Cir.1986).

When reviewing factual findings, an appellate court is not to weigh the evidence or reverse the finding because it would have decided the case differently. *Id.* at 400. The Tenth Circuit has held in the bankruptcy context that "[t]he bankruptcy court's findings should not be disturbed absent the most cogent reasons appearing in the record." *Id.* (quoting *In re Reid*, 757 F.2d 230, 233–234, (10th Cir.1985)). A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.[1] *Hall v. Vance,*

---

1. Joyner, while acknowledging that factual findings are subject to a clearly erroneous standard, contends that "the issues revolve around the application of facts to the existing law, and, therefore, would be a *de novo* review." Joyner contends that this case presents a mixed question of fact and law, subject to *de novo* review.

*See Matter of Tri–State Equipment, Inc.*, 792 F.2d 967, 970 (10th Cir.1986) (mixed question primarily involves a consideration of legal principles). In other § 523 cases, the Tenth Circuit has applied the "clearly erroneous" standard to the bankruptcy court's findings of fact. *See In re Black*, 787 F.2d 503 (10th Cir.1986); *In re*

887 F.2d 1041, 1043 (10th Cir.1989); *see Parts & Electric Motors, Inc. v. Sterling Electric,* 866 F.2d 228, 233 (7th Cir.1988), *cert. denied,* 493 U.S. 847, 110 S.Ct. 141, 107 L.Ed.2d 100 (1989) (clearly erroneous decision must strike court "as wrong with the force of five-week-old, unrefrigerated dead fish.").

### 11 U.S.C. § 523

A central purpose of the Bankruptcy Code "is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" *Grogan v. Garner,* — U.S. —, —, 111 S.Ct. 654, 659, 112 L.Ed.2d 755, 764 (1991) (quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)). However, the "fresh start" policy embodied in the Bankruptcy Code is intended for the "honest but unfortunate debtor." *Id.* The Bankruptcy Code therefore contains provisions which may prevent a debtor who has committed fraud from discharging debts arising from such fraud. "Exceptions to discharge are construed narrowly, and the burden of proving that a debt falls within a statutory exception is on the party opposing discharge." *In re Black,* 787 F.2d 503, 505 (10th Cir.1986).

Section 523 of Title 11 provides in pertinent part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

(2) for money, property, services, or an extension, renewal, or refinancing or credit, to the extent obtained, by—

. . . . .

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive . . .

■ The creditor (plaintiff) seeking to have a debt declared nondischargeable under § 523 bears the burden of proving each of the four requirements. At the time Judge Pearson decided this case, the Tenth Circuit, as well as several other circuits, had held that the creditor was required to prove that the debt came within § 523 by clear and convincing evidence. *See In re Black,* 787 F.2d at 505. Other circuits had held creditors to only the preponderance standard. *See Grogan,* — U.S. at — n. 7, n. 8, 111 S.Ct. at 657 n. 7, n. 8, 112 L.Ed.2d at 762 n. 7, n. 8 (collecting cases demonstrating split of circuits on the appropriate burden of proof). In *Grogan,* the Supreme Court unanimously held "that the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) [11 U.S.C.A. § 523(a)] is the ordinary preponderance-of-the-evidence standard." — U.S. at —, 111 S.Ct. at 661, 112 L.Ed.2d at 767. *See In re Serafina,* 938 F.2d 1156 (10th Cir.1991). Therefore, Arkansas Aluminum was held to and able to satisfy a higher burden of proof than is required. This court's decision that the bankruptcy court's decision was not clearly erroneous necessarily means that the creditor would have prevailed under a preponderance standard.

In this appeal from the bankruptcy court, Joyner concedes that the statement in writing was (1) materially false and (2) respected his financial condition. Joyner contests the bankruptcy court's determination on the other two requirements of § 523(a)(2)(B), namely that (3) the creditor reasonably relied upon his financial state-

*Mullet,* 817 F.2d 677, 678–79 (10th Cir.1987); *In re Liming,* 797 F.2d 895, 897 (10th Cir.1986); *see also Matter of Jordan,* 927 F.2d 221, 223–24 (5th Cir.1991) (applying clearly erroneous standard to findings of fact). This case does not appear to present "mixed questions" but instead presents either questions of fact, subject to the "clearly erroneous" standard of review, or questions of law, subject to *de novo* review.

ment and (4) that the debtor made or published the financial statement with the intent to deceive. Arkansas Aluminum contends that the bankruptcy court's decision was not clearly erroneous and that the bankruptcy court's decision was absolutely correct.

### Reasonable Reliance

■ Joyner contends that the bankruptcy court erred in determining that Arkansas Aluminum reasonably relied on his financial statement. Joyner contends the bankruptcy court ignored or discounted the "red flag" raised by the conflicting information in his financial statement and the financial statement of Midwest. Joyner argues that listing J & W Enterprises (farming) and Midwest Diecast, Inc., (manufacturing) was an obvious red flag to Arkansas Aluminum triggering Arkansas Aluminum's duty to investigate the extent of Joyner's contingent liabilities.

Joyner also contends that the bankruptcy court erred in concluding that there was no way of verifying most of the contingent liabilities omitted from Joyner's financial statement. Joyner repeatedly argues that Arkansas Aluminum could have easily determined whether he had any contingent liabilities by simply calling him on the telephone and asking him whether or not he had any contingent liabilities arising from any of the businesses listed in his financial statement.[2] Arkansas Aluminum apparently did not directly contact Joyner until after Midwest could not pay its account.

Joyner also argues that Arkansas Aluminum's verification process was inadequate as demonstrated by the fact that Arkansas Aluminum initially denied Midwest's credit application after investigating its credit. In contrast, Arkansas Aluminum did not verify or check Joyner's

credit because that was not part of Arkansas Aluminum's procedure. Joyner contends that Arkansas Aluminum did not rely on his financial statement in issuing credit, but instead relied on his personal guaranty. Joyner contends that Arkansas Aluminum's purported reliance on the financial statement is merely an afterthought to collect an otherwise dischargeable debt.

Arkansas Aluminum acknowledges that the extension of credit to Midwest was, with the benefit of hindsight, "foolish." Arkansas Aluminum, however, responds that it reasonably relied on Joyner's financial statement. The statement lists no contingent liabilities. More importantly, the financing statement indicates that Joyner would inform Arkansas Aluminum of any material unfavorable change in his financial condition. Arkansas Aluminum contends that the uncontroverted evidence indicates that "it did not fail to seek information from sources that are commonly used or that it didn't pursue normal business practices." Arkansas Aluminum contends that it complied with its own and industry practices.

In *In re Mullet*, 817 F.2d 677, 679 (10th Cir.1987), the Tenth Circuit commented that "the reasonableness of a creditor's reliance will be evaluated according to the particular facts and circumstances present in a given case." The court of appeals also commented that the court should not, in hindsight, substitute its business judgment for that of the creditor. *Id.* at 681. *See In re Hicklin*, 121 B.R. 65, 67 (D.Kan.1990) (discussing *Mullet*).[3]

■ In *Mullet*, the Tenth Circuit implicitly recognized four factual situations where verification of the information in a financial statement were not necessary: (1) An on-

---

**2.** Joyner contends that if Arkansas Aluminum had ever contacted him, they would have been aware of contingent liabilities in the amount of $1,162,000.

**3.** Like the case at bar, *In re Hicklin*, also arises out of a personal guaranty issued to Arkansas Aluminum. As mentioned above, Thomas Hicklin also gave his personal guaranty to Arkansas Aluminum for the aluminum ingots. Dennis Joyner is mentioned in Judge Kelly's opinion as

also having given a personal guaranty to Arkansas Aluminum. 121 B.R. at 66. In *In re Hicklin*, which appears to be factually similar, Judge Kelly affirmed the bankruptcy court's decision which found the debtors' debt to Arkansas Aluminum to be nondischargeable pursuant to § 523(a)(2)(B). In that case, Hicklin apparently admitted that he knew Arkansas Aluminum would rely on his financial statement. 121 B.R. at 68.

going relationship between the debtor and creditor; (2) The statements in question contained no information indicating that further investigation was required; (3) There was no indication that further investigation would have uncovered the falsity of the representations; (4) The asserted failure to verify occurred after the loan had been made. *Mullet,* 817 F.2d at 681; *Hicklin,* 121 B.R. at 67–68.

The court concludes that the bankruptcy court's decision was not clearly erroneous. Under the facts and circumstances of this case, Arkansas Aluminum's reliance was not unreasonable.

■ Direct proof of actual reliance is difficult to obtain. *In re Myers,* 124 B.R. 735, 742 (Bankr.S.D.Ohio 1991). The creditor does not have to prove that the financial statement was the sole reason for extending credit; partial reliance is sufficient. *Id.* It is sufficient for the creditor to show the false financial statement was a substantial factor in causing the extension of credit. *Id.* (quoting *In re Tomei,* 24 B.R. 204, 206 (D.C.N.Y.1982) (quoting *In re Clancy,* 279 F.Supp. 820, 822 (D.Colo.1968), *aff'd* 408 F.2d 899 (10th Cir.), *cert. denied,* 396 U.S. 958, 90 S.Ct. 430, 24 L.Ed.2d 422 (1969)). Arkansas Aluminum introduced evidence that it relied on Joyner's financial statement in extending credit to Midwest. The bankruptcy court's finding on this issue was not clearly erroneous.

The "red flags" identified by Joyner do not demonstrate that Arkansas Aluminum unreasonably relied upon his financial statement.[4] The discrepancy between the amount listed as stockholders' equity and the book value of Midwest is explained by the fact that the company had recently formed and incurred start-up expenses. A representative of Arkansas Aluminum toured Midwest's facility. Arkansas Aluminum's credit manager was not concerned about the stock valuation, as low stockholders' equity was typical for new companies and Midwest, at that time, possessed a large contract and was an on-going concern.

The uncontroverted evidence established that Arkansas Aluminum followed its own internal procedures in accepting Joyner's guaranty and that Arkansas Aluminum's verification procedures comported with industry practices. Joyner produced no evidence that his contingent liabilities were ascertainable by any verification method such as a credit check. The uncontroverted evidence therefore indicated that investigating whether Joyner had any contingent liabilities would have essentially been an impossible and futile act. Joyner's argument that all Arkansas Aluminum needed to do to verify whether he had any contingent liabilities was to give him a phone call is belied by the financial statement which lists no contingent liabilities and states that Joyner will inform Arkansas Aluminum of any material changes in his financial condition which are not reflected in the financial statement. Arkansas Aluminum could reasonably rely on that statement, as the financial statement appears to be complete in and of itself. *See In re Hicklin,* 121 B.R. at 68.

### Duty to Investigate

In *In re Sanford,* Case No. 85–12164, Adv. No. 86–0095 (D.Kan.Bankr.Ct., Jan. 8, 1987), the bankruptcy court identified that there were four situations where the creditor's reliance was not reasonable:

(1) where the creditor knew that the financial information was not accurate; (2) where the statement contained obviously inadequate financial information; (3) where the creditor's investigation of the statement suggests its falsity or incompleteness; and (4) where the creditors failed to verify information on the statement. (citations omitted).

Both parties agree that these are basically the correct criteria for determining whether a creditor's reliance was reasonable. The bankruptcy court considered each of these situations but concluded that Arkansas Aluminum's reliance was reasonable.

---

4. Arkansas Aluminum somewhat glibly refers to the "red flags" that Joyner has identified as "red herrings."

Joyner contends that the fact no ongoing relationship existed between Arkansas Aluminum and Midwest (or Joyner himself) is strong evidence Arkansas Aluminum's reliance on the financial statement was unreasonable. Joyner contends that the absence of any prior dealings between Arkansas Aluminum and Midwest compelled closer scrutiny of Joyner's financial statement. Joyner contends that the financial statement was obviously inadequate and raised several "red flags." On page thirty of Joyner's brief, he lists five "red flag" indicators: (1) Lack of prior business relationship; (2) Joyner's financial statement lists that he is a partner or officer in the ventures of J & W Enterprises and Midwest; (3) Joyner lists a note from H & J Enterprises (a third business in which Joyner was involved) as an asset; (4) Midwest's financial statement indicated a negative stockholder's equity, but Joyner listed stock in Midwest at $120,000; (5) $1,100,000 in contingent liabilities were related to two businesses listed in Joyner's financial statement (under the section dealing with contingent liabilities). Joyner contends that these were "clear and unequivocal" red flags.

As Arkansas Aluminum admits, its decision to extend credit to Midwest was not, in hindsight, a particularly prudent decision. The court does not, however, review the creditor's decision on the basis of perfect hindsight. None of the "red flags" identified by Joyner demonstrate that the bankruptcy court committed clear error in finding Joyner's debt nondischargeable.

As discussed above, the bankruptcy court accepted Arkansas Aluminum's explanation of why it did not consider the disparity between Joyner's financial statement and Midwest's financial statement to be a red flag. The other issues raised by Joyner once again turn the court's analysis to the statement found in Joyner's financial statement which states that Joyner would inform the creditor of any materially unfavorable change in his financial condition. Joyner's reliance on the argument that Arkansas Aluminum should have called him to ask whether he had any contingent liabilities places too much weight on too slender a reed. To accept Joyner's argument would essentially allow him to profit from one additional aspect of his fraudulent financial statement. Given the assurances found in the financial statement, the fact that Joyner's contingent liabilities were not otherwise ascertainable and that Arkansas Aluminum complied with its own and industry practices, the bankruptcy court's decision was not clearly erroneous.

### Intent to Deceive

Joyner dedicates one paragraph of his thirty-one page brief to his contention that the evidence did not establish his intent to deceive. As the bankruptcy court noted, direct evidence of intent to deceive is rarely available, but instead must be determined from the facts and circumstances of each case. The Tenth Circuit has noted that "the requisite intent may be inferred from a sufficiently reckless disregard of the accuracy of the facts." *In re Black*, 787 F.2d at 506. *See In re Myers*, 124 B.R. at 741.

The bankruptcy court's conclusion that Joyner intended to deceive Arkansas Aluminum was not clearly erroneous. The omission of significant contingent liabilities in the financial statement was strong evidence of an intent to deceive. Joyner testified that he was experienced in reviewing and understanding financial statements. Joyner had a substantial amount of experience in business. Viewed in light of the all of the facts and circumstances, the bankruptcy court's decision was not erroneous.

IT IS THEREFORE ORDERED that the bankruptcy court's decision finding Joyner's debt to Arkansas Aluminum nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B) is affirmed.