**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**91-1069**
_____

IN THE MATTER OF: BILLYE M. LUCE,
d/b/a L & L INTERNATIONAL, L & L
LEASING, and L & L INTERNATIONAL
ENTERPRISES,

                                        Debtor.


BILLYE M. LUCE, d/b/a L & L
INTERNATIONAL, L & L LEASING
and L & L INTERNATIONAL ENTERPRISES,

                              Appellant-Cross-Appellee,

versus

FIRST EQUIPMENT LEASING CORPORATION

                              Appellee-Cross Appellant.
_____


IN THE MATTER OF:  JACK M. LUCE
and BILLYE M. LUCE, d/b/a L & L
INTERNATIONAL and L & L LEASING,

                                        Debtors.

BILLYE M. LUCE, d/b/a L & L
INTERNATIONAL and L & L LEASING,

                              Appellant-Cross-Appellee,

versus

WESTINGHOUSE CREDIT CORPORATION,

                              Appellee-Cross-Appellant.


_____

Appeals from the United States District Court
for the Northern District of Texas
_____

(April 30, 1992)


**ON PETITION FOR REHEARING**

(Opinion March 9, 1992, 5th Cir. 1992, ___ F.2d ___ )

Before GOLDBERG, SMITH, and DUHE, Circuit Judges.

PER CURIAM:

Westinghouse Credit Corporation requested rehearing by the panel to clarify the scope of the remand to the bankruptcy court articulated in the panel opinion reported at slip op. 3422 (5th Cir. Mar. 9, 1992). After careful consideration, we voted to GRANT the petition for panel rehearing. In connection therewith, we withdraw our earlier opinion in this appeal in its entirety and substitute the following:

In this bankruptcy case, we examine several issues concerning a debtor's exemption from discharge. First, must this Court retroactively apply the preponderance of evidence standard of proof for dischargeability exceptions as articulated by the Supreme Court after the bankruptcy court entered judgment?; second, did the bankruptcy court clearly err in exempting the debt under three First Equipment Leasing Corporation leases and one Westinghouse Credit Corporation lease from discharge?; third, did the bankruptcy court clearly err in finding the debt from another Westinghouse lease dischargeable?; and, fourth, did the district court err in refusing to award the prevailing creditors either pre- or post-petition attorney's fees?

## I. BROKE LUCE

Billye and Jack Luce ("the Luces") were partners in several partnerships in the 1980's: L & L Leasing ("LLL"), L & L International ("LLI"), and L & L International Enterprises ("LLE")

**2**

(collectively, the "Luce Partnerships"). The Luces not only operated a successful Amway distribution business, but also purchased computer components for the purpose of combining them into computer systems. First Equipment Leasing Corporation ("FELC") and Westinghouse Credit Corporation ("WCC") engaged in the equipment leasing business. This case is about the unfortunate liaison between the Luces and the equipment lessors.[1]

The general scheme involved procurement of commercial financing from various finance companies. The companies leased parts for various multi-user computer systems to the Luces and the Luce Partnerships. The finance companies, after Jack Luce signed an acknowledgement that the particular equipment had been received in good order, and, in some cases, after Billye Luce had personally guaranteed the lease payments, advanced the cost of the equipment leased from them by the Luces and the Luce Partnerships to a computer supplier. The computer supplier, however, was in cahoots with Jack Luce. Instead of sending the leased equipment to the Luce Partnerships, the equipment supplier secretly kicked back the money it received from the finance companies to Jack Luce or the Luce Partnerships. Out of fifteen funded leases, only two computer systems were actually delivered. The two systems served as collateral for at least fourteen financing transactions. In total,

---

[1] In its opinion, the bankruptcy court provided a complete review of the parties' claims, defenses, the stipulated facts, and findings of fact as to FELC and WCC. First Equip. Leasing Corp. v. Luce (In re Luce), 109 B.R. 202 (Bankr. N.D. Tex. 1989). Rather than repeat the facts in detail, we merely summarize them.

Jack and Billye Luce employed over $500,000 of the diverted funds for personal use. The dispute we consider today concerns five transactions with two different finance companies.

Jack, doing business as LLE, signed three equipment leases with FELC. Billye personally guaranteed each of the leases. Jack acknowledged that the computer system listed in each of the leases had been delivered in good working order. In reasonable reliance on the leases, guarantees, and acknowledgements, FELC paid a computer system supplier ("Equipment Supplier") for the equipment. But the Equipment Supplier never delivered the computer systems to the Luces. Instead, the Equipment Supplier passed on approximately seventy percent of the funds it received from FELC -- $115,500 for each of the three systems -- to the Luce Partnerships. Jack and Billye owe FELC almost five hundred thousand dollars under the three equipment leases.

Both Billye and Jack Luce, doing business as LLI, signed two other equipment leases, which the lessor later assigned to WCC. The finance company paid the Equipment Supplier for the equipment, then leased the equipment to the Luces. The Luces defaulted on both leases, leaving Billye and Jack indebted to WCC for over two hundred thousand dollars. WCC sued in state district court to recover the unpaid balance under the two equipment leases and sought sequestration of the collateral for the leases. Proceeds from the sale of certain collateral sequestered and sold remains with the Clerk of the District Court of Dallas County.

In late 1986, the Luces filed a voluntary petition for relief

**4**

under Chapter 7 of the Bankruptcy Code. This filing resulted in the abatement of the state court litigation before the court made a final determination on the merits. FELC and WCC initiated adversary proceedings to determine the dischargeability of the Luces' debt under the leases and guarantees. The bankruptcy court entered an agreed judgment and order of nondischargeability against Jack Luce in the adversary proceeding filed by FELC and in companion adversary proceedings brought by other finance companies, but not in the adversary proceeding filed by WCC. FELC attempted to persuade the bankruptcy court to exempt Billye Luce's debt under the guarantees from dischargeability under 11 U.S.C. § 523(a).[2] WCC argued that neither Jack nor Billye should be discharged from debt under the two WCC leases under 11 U.S.C. § 523(a).

After a consolidated bench trial in the adversary proceedings, the bankruptcy court entered its findings of fact and conclusions of law. In separate judgments, the court denied the dischargeability of Billye Luce's entire debt to FELC and denied

_____

[2]    § 523(a) of the Bankruptcy Code ("Code") provides in relevant part that a discharge under the Code

    does not discharge an individual debtor from any debt--
        . . . .
        (2) for money, property, services, or an
        extension, renewal, or refinancing of credit,
        to the extent obtained by--
            (A) false pretenses, a false representation, or
            actual fraud, other than a statement respecting a
            debtor's or an insider's financial condition;
        . . . .
        (4) for fraud or defalcation while acting in
        a fiduciary capacity, embezzlement, or
        larceny;

11 U.S.C. § 523(a)(2), (a)(4) (1979 & Supp. I 1991).

the dischargeability of Billye and Jack Luce's debt on the second WCC lease.  The court awarded both creditors pre- and post-judgment interest and costs.  The district court affirmed the judgments of the bankruptcy court.

In this Court, Billye Luce appeals the non-dischargeability of her debt to FELC and WCC.  WCC appeals the dischargeability of Billye and Jack Luce's debt on its first lease.  FELC appeals the denial of pre- and post-petition attorney's fees only as to Billye, but WCC appeals the denial of attorney's fees as to both Billye and Jack.[3]  We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.


## II. PLAYING FAST AND LUCE


We set aside findings of fact by a bankruptcy court only when they are clearly erroneous.  Jordan v. Southeast Nat'l Bank (In re Jordan), 927 F.2d 221, 223-24 (5th Cir. 1991) (citing Bankr. Rule 8013).  We engage in a de novo review of the bankruptcy court's conclusions of law.  Id. at 224 (citing Bankr. Rule 8013).  Since "[d]eterminations as to the dischargeability of debts under section 523 are reviewed under the clearly erroneous standard," we subject only the bankruptcy court's conclusions as to attorney's fees to de novo review.  See Cheripka v. Republic Ins. Co. (In re Cheripka), No. 91-3249, 1991 WL 276289, at *10 (3rd Cir. Dec. 31, 1991) (citations omitted).

---

[3]     Jack Luce has not filed a brief in this appeal.

6

## A.  Retroactive Application of Grogan

In Grogan v. Garner the Supreme Court announced a new rule: The "standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard."  Grogan v. Garner, 111 S.Ct. 654, 661 (1991).  The rule that a creditor must establish the nondischargeability of its claim by a preponderance of the evidence displaced the clear and convincing evidence rule utilized by the Court of Appeals for the Eighth Circuit in reversing the Grogan district and bankruptcy courts.  Id. at 656-57; see id. at 657 & n.7 (noting that "most other Circuits" required proof by clear and convincing evidence to avoid dischargeability under § 523).

The Court decided Grogan, however, *after* the bankruptcy court and district court entered judgments in this proceeding.  Since the bankruptcy court and the district court apparently required both FELC and WCC to prove the nondischargeability of their claims by clear and convincing evidence,[4] the creditors assert that this Court should remand to allow the bankruptcy court to make findings of fact based upon the lower preponderance of the evidence standard.    Both    creditors    urge    this    Court    to    apply    the

---

[4]    Other decisions by the bankruptcy court judge indicate his consistent application of the clear and convincing standard. *See*, *e.g.*, Zervas v. Nix (In re Nix), 92 B.R. 164, 169 (Bankr. N.D. Tex. 1988); Norton v. Dean (In re Dean), 79 B.R. 659, 662 (Bankr. N.D. Tex. 1987).  The memorandum order of the district court exhibits application of the clear and convincing standard. Mem. Order at 9.

preponderance of the evidence standard adopted in <u>Grogan</u> retroactively.

The issue before us, then, is whether we must apply the lower standard of proof articulated in <u>Grogan</u> retroactively. The threshold question under <u>James B. Beam Distilling Co. v. Georgia</u>, 111 S.Ct. 2439 (1991), is whether the Supreme Court applied the rule enunciated in <u>Grogan</u> to the parties in that case. *See* <u>Sterling v. Block</u>, No. 90-3913, slip op. at 2572 (5th Cir. Jan. 30, 1992). For "[o]nce retroactive application is chosen for any assertedly new rule, it is chosen for all others who might seek its prospective application." <u>Beam</u>, 111 S.Ct. at 2447-48.[5] Although <u>Grogan</u> did not overtly address the retroactivity issue, nor reserve the question of whether its holding applied to the parties before it, we read the case as "follow[ing] the normal rule of retroactive application in civil cases" and applying the preponderance of the evidence standard retroactively to the parties before the Court. <u>Grogan</u>, 111 S.Ct. at 661 (reversing the judgment of the court of appeals that creditors who obtained a judgment of fraud in a jurisdiction requiring proof by a preponderance of the evidence could not invoke collateral estoppel in the bankruptcy court because the clear and convincing evidence standard applied to the fraud exception from discharge under § 523); *see* <u>Beam</u>, 111 S.Ct. at 2445.

---

[5] We do not apply the factors set out by the Supreme Court in <u>Chevron Oil v. Huson</u>, 92 S.Ct. 349, 355-56 (1971), "if the rule was retroactively applied to the parties in the case in which it was originally announced." <u>Sterling</u>, slip op. at 2572 (citing <u>Beam</u>, 111 S.Ct. at 2446).

Since the <u>Grogan</u> Court applied its own rule, we must impose the <u>Grogan</u> preponderance of the evidence standard retroactively in this case.  We remand the section 523 claims delineated in part II(C) to the district court to enable it to find whether WCC sustained its burden of proof under the preponderance of the evidence standard enunciated in <u>Grogan</u>.

**B.  Nondischargeability of Billye Luce's Debt to FELC and WCC**

A discharge in bankruptcy "does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud . . . ."  11 U.S.C. § 523(a)(2)(A) (Supp. 1991). Although the bankruptcy court found that Billye Luce did not participate directly in Jack Luce's fraud, it imputed Jack Luce's fraudulent misrepresentations to Billye Luce based on several findings, which are all amply supported by the record.

First, Jack Luce did "obtain money, services and an extension of credit from *FELC* by false pretenses, false representations and actual fraud."  <u>Luce</u>, 109 B.R. at 206.  Jack Luce made false representations to *WCC* about the existence of the equipment covered by the second WCC lease within the meaning of 523(a)(2)(A).  <u>Id</u>. at 209.  Billye Luce does not challenge these findings that Jack Luce's actions constituted "false pretenses, false representations, or actual fraud" within the meaning of § 523(a)(2)(A).  Second,

**9**

Billye and Jack Luce were partners in the Luce Partnerships during the time of Jack Luce's fraudulent misrepresentations to both FELC and WCC. Id. at 206, 209. Third, Jack Luce acted on behalf of the Luce Partnerships and in the ordinary course of the business of the Partnerships when he made the false representations. As Jack Luce's partner, Billye Luce certainly "shared in the monetary benefits" of Jack Luce's fraud. Id. Based on these findings, the bankruptcy judge imputed the "knowledge and actions" of Jack Luce to Billye Luce. Id. at 206.

Billye Luce challenges the district court's affirmance of the bankruptcy court's determination that her debt to WCC on the second lease and to FELC was nondischargeable under section 523(a)(2)(A), arguing that the court clearly erred. Billye Luce contends that because she did not know about Jack Luce's fraudulent representations and because Jack Luce's fraudulent representations to FELC and WCC were outside the scope of the business of the Luce Partnerships, his knowledge and actions cannot be imputed to her, the "innocent partner." Moreover, Billye Luce argues that FELC and WCC failed to sustain their burden of proof because the evidence did not show that she actually obtained any money, property or services by fraud or benefitted monetarily from Jack Luce's fraud.

Over a century ago, the Supreme Court established that

a partner's fraud [can] be imputed to a debtor to make a debt non-dischargeable under § 17(a)(2) of the Bankruptcy Act, [the predecessor statute to 11 U.S.C. § 523(a)(2)]. This is true not only where the debtor did not consent to h[er] partner's fraudulent acts, but where [s]he had no knowledge or reason to have knowledge of these acts.

Federal Dep. Ins. Corp. v. Calhoun (In re Calhoun), 131 B.R. 757,

**10**

760-61 (Bankr. D.D.C. 1991) (discussing <u>Strang v. Bradner</u>, 5 S.Ct. 1038, 1041 (1885)). Our research confirms that "the lower courts have held that the rule continues that fraud can be imputed to an innocent partner regardless of his knowledge or involvement for purposes of 11 U.S.C. § 523(a)(2)(A)." <u>Id</u>. at 761.[6]

The evidence demonstrates that Jack Luce entered into the equipment leases on behalf of the Luce Partnerships and in the ordinary course of the business of the Luce Partnerships. Billye Luce argues that she was a partner only in the "Amway business" and

---

[6] *See* <u>BancBoston Mortgage Corp. v. Ledford (In re Ledford)</u>, 127 B.R. 175, 184 (M.D. Tenn. 1991) ("authorities in agreement that the fraud of one partner may be imputed to another for determining dischargeability under 11 U.S.C. § 523(a)(2)); <u>Terminal Builder Mart v. Warren (In re Warren)</u>, 7 B.R. 571, 573 (Bankr. N.D. Ala. 1980) (question "well settled" that "a debt arising from the obtaining of goods by false pretenses of a partner, acting for the partnership, constitutes a claim which is not dischargeable in bankruptcy as to the misbehaving partner, the partnership, or an innocent partner"); *cf.* <u>Impulsora Del Territorio Sur, S.A. v. Cecchini (In re Cecchini)</u>, 780 F.2d 1440, 1443 (9th Cir. 1986) (imputing partner's knowledge and intent to debtor under § 523(a)6) because partner acted on behalf of the partnership and in the ordinary course of the business of the partnership in converting funds); <u>Love v. Smith (In re Smith)</u>, 98 B.R. 423, 426 (Bankr. C.D. Ill. 1989) ("Many courts have found that fraud committed by an agent would render a debt nondischargeable as to a debtor-principal under § 523(a)(2)); <u>Fluehr v. Paolino (In re Paolino)</u>, 75 B.R. 641, 649 (Bankr. E.D. Pa. 1987) (holding that if husband acted as wife's agent within the scope of the agency relationship, then the agent's fraud could be imputed to the principal under § 523(a)(2)); <u>Citizens State Bank v. Walker (In re Walker)</u>, 53 B.R. 174, 179 (Bankr. W.D. Mo. 1985) ("fraud of an authorized agent, without more, has continually been recognized as a ground of nondischargeability").

As noted by the bankruptcy court in <u>Calhoun</u>, a "few sharply criticized" decisions have refused to impute the fraud of an agent to the principal without proof that the principal knew or should have known of the agent's fraud. For a critical discussion undermining the reasoning of those decisions, see <u>Calhoun</u>, 131 B.R. at 761; <u>Paolino</u>, 75 B.R. at 648-49; <u>Walker</u>, 53 B.R. at 179-81.

not in the "computer business." Thus, she reasons, Jack Luce's fraud was outside the scope of the "Amway business." These two "businesses" were both the business of the Luce Partnerships, however. Billye Luce, Jack Luce's partner in the Luce Partnerships, signed leases, guarantees and acceptances of delivery connected with the lease financing.

Under section 523 (a)(2)(A), a debtor is not discharged from any debt for money, property, services or credit obtained by fraud. Billye Luce maintains that her debt to FELC and WCC remains dischargeable because she never actually obtained any money, property, services or credit for herself by fraud. The test under section 523(a)(2)(A), however, is not whether the debtor actually procured the money, property, services or credit for him or herself. 3 Collier on Bankruptcy ¶ 523.08[1] (15th ed. 1991). Rather, the Code dictates that a particular debt is nondischargeable "[i]f the debtor benefits in some way" from the money, property, services or credit obtained through deception. Century First Nat'l Bank v. Holwerda (In re Holwerda), 29 B.R. 486, 489 (Bankr. M.D. Fla. 1983) (holding that debtor who was a principal of a corporation "'obtained money' within the meaning of § 523(a)(2)" when the creditor approved a loan to the corporation).

Despite Billye Luce's testimony that she "never saw one dime of that money," the evidence shows that Billye Luce did benefit from Jack Luce's fraud. As a partner, Billye Luce benefitted when the Equipment Supplier passed on funds received by it from the equipment lessors to the Luce Partnerships. Most of the money

**12**

obtained from the equipment lessors went into Billye and Jack Luce's joint bank accounts. In turn, the money in the joint bank accounts was used to acquire real estate, stock and oil and gas investments held jointly by Billye and Jack Luce, to pay business and personal expenses of the Luces, and to make payments on leases and loans, some of which Billye Luce had personally guaranteed.

Our review of the record thoroughly convinces us that the district court did not commit clear error when it affirmed the bankruptcy court's findings that FELC and WCC established, apparently by clear and convincing evidence, that Billye and Jack Luce's debt to WCC on the second lease and Billye Luce's debt to FELC were nondischargeable under 11 U.S.C. § 523(a)(2)(A). FELC and WCC were held to and satisfied a higher burden of proof than that required by Grogan. Our decision affirming the district court's judgments "necessarily means that the creditor[s] would have prevailed under a preponderance standard." Arkansas Aluminum Alloys, Inc. v. Joyner (In re Joyner), 132 B.R. 436, 439 (D. Kan. 1991).

## C. Dischargeability of the Luces' Debt to WCC on the First Lease

In contrast to the equipment on the second WCC lease, which the Equipment Supplier did not deliver to the Luces, the bankruptcy court found that the Equipment Supplier "substantially delivered"

**13**

the equipment on the first WCC lease to the Luces.[7]  Thus, any

representations made by Jack Luce concerning the existence of the

equipment on the first WCC lease were not false.  WCC argues that

the bankruptcy court erred in failing to make findings of fact

relating to WCC's independent theories of nondischargeability under

section 523(a)(2) as to the debt on the first WCC lease.[8]  First,

WCC argues that not only did Jack Luce falsely represent the

*existence of the equipment*, but that Jack Luce included false

representations in the *application* for the first WCC lease and

---

[7]    Contrary to WCC's assertion, the bankruptcy court did not clearly err in finding that the equipment on the first WCC lease was "substantially delivered."  The record supports this finding.

[8]    WCC also argues that it established its damages for Jack Luce's conversion of the equipment on the first WCC lease by a preponderance of the evidence.  WCC misconstrues the nature of the bankruptcy court's findings, however.  WCC concedes that "the issue of conversion was not asserted by any party or the court as an issue during trial."  Not only did the bankruptcy court raise the conversion issue *sua sponte*, but it merely addressed the matter in *dicta*.  The bankruptcy court simply noted that Jack Luce *might* have changed the serial numbers on particular equipment on the first WCC lease.  *If* proved by WCC, such activity would have constituted conversion of WCC's collateral under § 523(a)(6).  Even if WCC had proved conversion, though, WCC "failed to offer valuation testimony on allegedly converted collateral on the first lease."
Even if we were to entertain an argument urging a statutory basis for nondischargeability not asserted below, it seems quite apparent that WCC did not satisfy its burden of proof as to the "willful and malicious activity" necessary to establish conversion of its collateral, nor did it meet the benchmark for proving damages for conversion because it offered no valuation evidence.  First State Bank v. Iaquinta (In re Iaquinta), 98 B.R. 919, 925 (Bankr. N.D. Ill. 1989) ("The fair market value of the converted collateral under § 523(a)(6) is the appropriate measure of damages for conversion.") (citing Morsovillo v. Krause (In re Krause), 44 B.R. 159, 163 (Bankr. N.D. Ill. 1984); *see* Haile v. McDonald (In re McDonald), 73 B.R. 877, 882 (Bankr. N.D. Tex. 1987).

**14**

*obtained* the lease financing under false pretenses.  WCC contends that Jack Luce falsely represented that the equipment would be used in the Amway part of LLI's business while harboring a secret intent to use the money for other purposes, and that WCC detrimentally relied on the false representation in its evaluation and approval process.  This evidence, according to WCC, provides an alternative basis for determining that Jack Luce fraudulently obtained the first WCC lease under section 523(a)(2)(A).[9]

Second, WCC maintains that Billye Luce acted with reckless indifference in blindly signing the first WCC lease for over $100,000 worth of equipment without regard for its truth or falsity.  WCC argues that Billye Luce never asked questions or made objections when she signed obligations on behalf of the Luce Partnerships.  WCC contends that this reckless indifference constitutes a "false representation" under section 523(a)(2)(A). WCC also argues that Billye Luce's reckless indifference to the fraud of her agent, Jack Luce, in obtaining the first WCC lease renders her responsible for that fraud.  Under either reckless indifference theory, WCC argues that Billye Luce's debt on the first lease is nondischargeable under section 523(a)(2)(A).[10]

---

[9]    Billye Luce responds that this argument seems to be directed only to Jack Luce.  If Jack Luce obtained the first lease on behalf of LLI while acting in the ordinary court of partnership business, however, any fraud on Jack Luce's part could be imputed to his partner, Billye Luce.  *See supra* p. 11 & n.6.

[10]    The district court explained the bankruptcy court's lack of findings on whether Billye Luce was recklessly indifferent in signing the first lease:  "The case authority cited by [WCC] . . . does not deal with a key factor in this

The bankruptcy court did not make specific findings of fact regarding the fraud of Jack Luce in obtaining the first WCC lease or the reckless indifference of Billye Luce in signing the first WCC lease. Federal Rule of Civil Procedure 52(a), which applies in adversary proceedings under Bankruptcy Rule 7052, requires a bankruptcy court to "find the facts specially" in all cases tried upon the facts without a jury. *See* <u>Texas Extrusion Corp. v. Palmer, Palmer & Coffee (In re Texas Extrusion Corp.)</u>, 836 F.2d 217, 220 (5th Cir.), *order aff'd*, 844 F.2d 1142, *cert. denied*, 109 S.Ct. 311 (1988); <u>Cities Serv. Co. v. Ocean Drilling and Exploration Co.</u>, 758 F.2d 1063, 1072 (5th Cir. 1985). "Findings of fact are especially important when the trial court's decision turns in part upon factual determinations." <u>Texas Extrusion</u>, 836 F.2d at 220. Since we have no opportunity, as did the bankruptcy judge during the bench trial, to "judge the credibility of the witnesses," the determination of the dischargeability of the Luces' debt under section 523(a) presents a question of fact properly

case, viz., the fact that the partner with whom Billy Luce signed the lease agreements was her husband of twenty-five years. Given the Luce's marital relationship," the district court found no error. Billye Luce similarly characterizes this case as one "about an innocent, trusting, naive wife."

We view the imputation issue as one about business partners. It is irrelevant to the determination of the dischargeability of Billye Luce's debts under section 523(a)(2) that the business partners also enjoyed a marital relationship. The concepts of law we employ do not turn on the nature of the marital relationship, but on the nature of the business relationship between the Luces -- the Luce Partnerships. The picture of Billye Luce as a woman who dutifully served her husband's interests without questions and without options ignores the import of her college education and extensive business experience.

**16**

resolvable by the bankruptcy court.  Fed. R. Civ. P. 52(a).

We vacate the judgment of the district court affirming the bankruptcy court's judgment with respect to the Luces' debt on the first WCC lease.  We remand to enable the bankruptcy court to determine whether WCC proved its independent theories of nondischargeability as to the debt on the first WCC lease by a preponderance of the evidence.  Specifically, 1) Did WCC prove by a preponderance of the evidence that Jack Luce made false representations in obtaining the first WCC lease, rendering Jack Luce's debt on that lease nondischargeable under section 523(a)(2)(A)?  If so, is that fraud properly imputed to Billye Luce under the standards set forth in section II(B) of this opinion, rendering Billye Luce's debt on the first WCC lease nondischargeable under section 523(a)(2)(A)?; 2) Did WCC prove by a preponderance of the evidence that Billye Luce acted with reckless indifference with respect to the first WCC lease, rendering Billye Luce's debt on the first WCC lease nondischargeable under section 523(a)(2(A)?

## D.  Attorney's Fees

The district court affirmed the bankruptcy court's denial of all attorney's fees to both FELC and WCC.  On cross-appeal, both creditors seek prepetition attorney's fees, or, alternatively, postpetition attorney's fees.  We review these questions of law de novo.

**17**

**1. Prepetition Attorney's Fees.**

Both FELC and WCC claim entitlement to attorney's fees incurred before the Luces filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. WCC instituted suit to recover the unpaid balance on its equipment leases in state district court before the Luces filed under Chapter 7. The state court did not finally determine the merits of the dispute.

In Klingman the bankruptcy court held that a creditor who prevailed under section 523(a)(4) could recover prepetition attorney's fees awarded in state court. Klingman v. Levinson (In re Levinson), 58 B.R. 831, 837 (Bankr. N.D. Ill. 1986), *aff'd*, 66 B.R. 548 (N.D. Ill. 1986), *aff'd*, 831 F.2d 1292 (1987); *cf*. Galpin v. Galpin (In re Galpin), 66 B.R. 127, 132 (N.D. Ga. 1985) (holding that the "bankruptcy court should not . . . award attorney's fees for work on proceedings in state court that have not been awarded by the relevant state court."). When a bankruptcy court determines that the underlying debt is nondischargeable, then "attorney's fees awarded by a state court based on state statutory or contractual grounds are [also] nondischargeable." Levinson, 58 B.R. at 837 n.7 (citations omitted). The Levinson court reasoned that the "attorney's fees are part of the state court judgment." Id.; *see* Texas Venture Partners v. Christian (In re Christian), 111 B.R. 118, 122 (Bankr. W.D. Tex. 1989) (holding that attorney's fees awarded to creditors in a state court final judgment were nondischargeable under § 523(a)(2)(A) (citations omitted). We have not found, nor have the creditors directed our attention to,

18

any cases holding that prepetition attorney's fees are nondischargeable under section 523(a) absent a state court judgment awarding attorney's fees to the creditors.

The state courts did not award attorney's fees to FELC or WCC. FELC did not even proceed against the Luces or the Luce Partnership in state court.[11]  The state court did not enter a final judgment in the case brought by WCC to recover the unpaid balances on its equipment leases.  We agree with the district court's affirmance of the bankruptcy court's denial of prepetition attorney's fees to FELC and WCC.

## 2.  Postpetition Attorney's Fees.

FELC and WCC also seek postpetition attorney's fees incurred by them in litigating this adversary proceeding.  After the bankruptcy court and district court entered judgments in this adversary proceeding, this Court decided Jordan v. Southeast Nat'l Bank (In re Jordan), 927 F.2d 221 (5th Cir. 1991).  In Jordan this Court first confronted the issue of whether postpetition attorney's fees incurred by prevailing creditors are exempt under 11 U.S.C. 523(a)(2).  We explicitly adopted the Sixth Circuit's approach:

> 11 U.S.C. § 523(a)(2)(B) excepts from discharge the whole of any debt incurred by use of a fraudulent financial statement, and *such a debt includes state-approved contractually required attorney's fees.*

Id. at 227 (quoting Martin v. Bank of Germantown (In re Martin), 761 F.2d 1163, 1168 (6th Cir. 1985) (emphasis added)); *see*

---

[11]    The record indicates that FELC did proceed in state court against the Equipment Supplier and individuals other than the Luces.

Transsouth Fin. Corp. v. Johnson, 931 F.2d 1505, 1509 (11th Cir. 1991).  Like section 523(a)(2)(B), section 523(a)(2)(A) excepts from discharge the debt incurred "by false pretenses, a false representation, or actual fraud," which encompasses "state-approved contractually required attorney's fees."  *Cf*. Davidson v. Davidson (In re Davidson), 947 F.2d 1294, 1298 (5th Cir. 1991) (following Jordan holding that "where a party has contracted to pay attorneys' fees for the collection of a nondischargeable debt, the fees also will not be discharged in bankruptcy" in a § 523(a)(5) case).

Although "prevailing creditors still have no *statutory* right to attorney's fees" because section 523(d) only gives prevailing debtors a right to attorney's fees in an adversary proceeding, we reconciled giving prevailing creditors the *contractual* right to attorney's fees with both the statutory language and legislative history of section 523(d).  Jordan, 927 F.2d at 227 (quoting Martin, 761 F.2d at 1168) (emphasis added).[12]  Of course, a creditor can only recover postpetition attorney's fees when that right arises from a contract between the creditor and the debtor that is enforceable under state law.  Transouth, 931 F.2d at 1509; Jordan, 927 F.2d at 227.

---

[12]    For a thorough discussion reconciling the statutory language and legislative history of § 523(d) with the recovery of postpetition attorney's fees by a prevailing creditor based on the creditor's contractual right to attorney's fees, see Transsouth, 931 F.2d at 1509; Jordan, 927 F.2d at 227-28; Martin, 761 F.2d at 1167-68.  *But see* Transsouth, 931 F.2d at 1514-18 (Clark, J., dissenting) ("validity under state law of a contractual provision for attorney's fees [does not] control[] when Congress expressly evidences an intent to disallow such fees.").

We vacate the judgment of the district court affirming the judgment of the bankruptcy court denying FELC and WCC postpetition attorney's fees. We remand to allow the bankruptcy court to examine the enforceability of any provisions in the FELC and WCC leases or guarantees entitling FELC to attorney's fees as against Billye Luce or entitling WCC to attorney's fees as against Billye or Jack Luce. If those provisions are enforceable under state law, then the bankruptcy court should determine the appropriate postpetition attorney's fees.

## III. A FEW LUCE ENDS

For the reasons stated above, we AFFIRM in part, VACATE in part, and REMAND for further proceedings consistent with this opinion.