**In the Matter of Delores L. GILL, Debtor.**

**Jere F. MOORE, Plaintiff,**

v.

**Delores L. GILL, Defendant.**

**Bankruptcy No. N94–11879–WHD. Adv. No. 94–1082N.**

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

April 14, 1995.

**668**

Gary C. Harris, Clayton, GA, Robert P. Wilson, Decatur, GA, for plaintiff.

Jacquelyn L. Kneidel, Newnan, GA, for defendant.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter comes before the Court on the Motion for Summary Judgment filed on December 27, 1994, by the plaintiff Jere F. Moore (hereinafter "Moore"). Moore's Motion arises in an adversary proceeding he commenced against the debtor Delores L. Gill (hereinafter "Gill") as a Complaint to Determine Dischargeability of Fraud Judgment. As such, the matters involved herein constitute a core proceeding over which this Court has jurisdiction. *See* 28 U.S.C. § 157(b)(2)(I). Based upon the reasons set forth in the following discussion, the Court will grant this Motion.[1]

### FACTUAL BACKGROUND

A contract between Moore and Gill's former husband, Grady R. Vaughan (hereinafter "Vaughan"), is the source of the dispute that is currently before the Court. Vaughan and Gill were married in 1988. At the time of their marriage, Vaughan owned and operated a wholesale tire business in Forsyth, Georgia, under the corporate name of B & R Tires, Inc. Moore expressed an interest in purchasing Vaughan's business, and the two parties entered into a $250,000.00 sales agreement in December of 1989. The contract obligated Moore to pay Vaughan $125,000.00 in cash at closing, with the remainder of the sales price payable by a promissory note repayable in 180 monthly installments of $1343.26. Included in the contract was a covenant by which Vaughan agreed not to compete, directly or indirectly, with Moore by operating a wholesale tire business in competition with B & R Tires.[2] Of importance to Gill, the covenant made specific reference to the retail tire business she owned and operated in Haralson, Georgia, under the name G & L Tire Company. The agreement stated that as long as the character of that business remained retail in nature, G & L would not violate the covenant. After the sale of B & R Tires was completed, Gill allowed Vaughan to participate in running G & L Tire.[3]

In 1990, the business deal between Moore and Vaughan soured as Moore failed to make the monthly payments on the promissory note as required by the contract. As a result, Vaughan commenced a civil action against Moore in the Superior Court of Lamar County, Georgia. Moore responded by filing a counterclaim against Vaughan, which he amended in 1992 to include Gill and another party, Terry W. Wade (hereinafter "Wade"), as counterclaim defendants. This counterclaim contained multiple counts alleging breach of contract, fraud, and constructive trust.

---

1. In conjunction with his Motion for Summary Judgment, Moore also filed a Motion for Relief from the Automatic Stay in this adversary proceeding. The Court, however, will not address the merits of the relief stay Motion. Should Moore desire that the Court consider those issues, he must file the necessary motion with the filing fee in the Debtor's underlying Chapter 11 bankruptcy case.

2. Of the $250,000.00 purchase price, $80,000.00 specifically was designated as consideration for Vaughan's agreement not to compete with the business once Moore purchased it.

3. Gill currently argues that during this time, Vaughan had no ownership interest in G & L Tire. In fact, she claims he had no interest in the business until she transferred it to him as part of their divorce in 1993. It appears that Vaughan thought otherwise, however, as he listed a half ownership interest in G & L Tire on a financial statement to Tara State Bank in May of 1989. *See* Moore's Response Brief, Exhibit X (March 17, 1995).

Of significance to this Court is the second count of the counterclaim which alleged that Moore was fraudulently induced to purchase B & R Tires from Vaughan. Through the counterclaim and fraud count, Moore alleged that Vaughan, Gill, and Wade operated as a partnership, and that they entered into a conspiracy to defraud Moore. Specifically, Moore claimed that the three "partners" entered into the noncompete agreement with full knowledge and intention to operate a business in direct competition with Moore. The alleged operation of a wholesale tire business in violation of the contract occurred at Gill's G & L Tire Company. The counterclaim further alleged that the "partnership" planted Wade as an employee in Moore's business for the purpose of undermining and disrupting the business and insuring its failure. Throughout all relevant times, Moore claimed that Gill, Vaughan, and Wade intended to bring about the failure of Moore's business so Vaughan could repurchase the assets at a foreclosure sale.

Four years after Vaughan commenced the state court action, the dispute finally was tried before a jury. The trial lasted two weeks and involved more than 1,000 pages of documentary evidence obtained from over 50 nonparties. Judgment was rendered on June 22, 1994, in favor of Moore against Gill, Vaughan, and Wade in the amount of $550,935.00. The verdict form utilized by the jury in reaching its decision included special interrogatories, all of which were answered in favor of Moore. In particular, the jury found that both B & R Tires and G & L Tire Company were actually partnerships composed of Gill, Vaughan, and Wade, and that G & L Tire Company was merely a continuation of B & R Tires. Moreover, the jury found in favor of Moore in the amount of $238,500.00 and against Gill, Vaughan, and Wade on Moore's fraud claim. After judgment was entered on the jury's verdict, Gill and the other counterclaim defendants made a request for a new trial, but the state court denied their motion on December 9, 1994. Gill since has brought her case before the Georgia Court of Appeals where the matter is currently pending.

After receiving the aforementioned adverse judgment in state court, Gill filed a voluntary petition for relief in this Court under Chapter 11 of the Bankruptcy Code on August 31, 1994. Moore is listed on her schedules as a judgment creditor. In response to Gill's bankruptcy, Moore commenced this adversary proceeding on November 16, 1994. By his Motion for Summary Judgment, Moore relies upon the doctrines of collateral estoppel and *res judicata* to argue that $238,500.00 of his overall judgment claim against Gill is a nondischargeable debt for fraud according to 11 U.S.C. § 523(a)(2)(A). Gill strenuously opposes the Motion and contends that the Court is not bound by the state court judgment. Specifically, she claims that the issues under consideration in the state court were not identical to the current dispute and that the facts do not support the findings of the jury. For these reasons, Gill wishes to relitigate the fraud issues in this Court, and requests that Moore's Motion be denied.

## CONCLUSIONS OF LAW

### A. Standard for Summary Judgment

In accordance with Federal Rule of Civil Procedure 56 (applicable to bankruptcy under Fed.R.Bankr.P. 7056), this Court will grant summary judgment only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of a proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party has the burden of establishing the right of summary judgment, *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *Clark v. Union Mut. Life Ins. Co.*, 692 F.2d 1370, 1372 (11th Cir.1982), and the Court will read the opposing party's pleadings liberally. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11.

In determining whether there is a genuine issue of material fact, the Court must view

the evidence in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.,* 766 F.2d 482, 484 (11th Cir.1985). The moving party must identify those evidentiary materials listed in Rule 56(c) that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *see also* Fed.R.Civ.P. 56(e). Once the motion is supported by a *prima facie* showing that the moving party is entitled to judgment as a matter of law, the party opposing the motion must go beyond the pleadings and demonstrate that there is a material issue of fact which precludes summary judgment. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Martin v. Commercial Union Ins. Co.,* 935 F.2d 235, 238 (11th Cir.1991).

### B. Collateral Estoppel

■ The Court first will consider Moore's argument that the doctrines of collateral estoppel and *res judicata* preclude Gill's discharge of the fraud portion of the state court judgment he received against her. These related doctrines prevent the relitigation of an issue already litigated and determined by a valid and final judgment in another court. *United States v. Irvin,* 787 F.2d 1506, 1515 (11th Cir.1986); *Sorrells Constr. Co. v. Chandler Armentrout & Roebuck, P.C.,* 214 Ga.App. 193, 193–94, 447 S.E.2d 101 (1994). Their purposes are to protect "litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979).

■ In raising this issue before the Court, Moore makes several references to both collateral estoppel and *res judicata.* Collateral estoppel, also known as issue preclusion, differs in application from *res judicata* in that the latter operates as a defense when there exists an identity of claim or cause of action in successive court proceedings. A party invokes collateral estoppel when the successive causes of action are different. One commentator has explained as follows:

> The essential element in the application of collateral estoppel is not that the action is barred by res judicata, but that some matter that is put at issue has been finally decided by the judgment in a previous action. In most cases the reason that the action is not barred is the fact that it is upon a different claim or cause of action, but in cases in which parties are permitted to split a single cause of action, the principles of collateral estoppel govern the second action to the extent of overlapping issues.

1B MOORE'S FEDERAL PRACTICE 2D, ¶ 0.441[2], at 517 n. 2 (1995); *see also Parklane Hosiery,* 439 U.S. at 326 n. 5, 99 S.Ct. at 649 n. 5.

■ A state court fraud action and subsequent bankruptcy dischargeability proceeding provide an example of the situation described above. *Res judicata* does not foreclose the bankruptcy proceeding because it is a cause of action separate from the state court fraud action. Nevertheless, identical issues with respect to the fraudulent conduct of the debtor are raised in both proceedings. To the extent these issues were decided in the state court action, collateral estoppel binds the bankruptcy court to the determination made on those matters. Indeed, it is now a well established principle of law that the doctrine of collateral estoppel applies in section 523(a) discharge exception proceedings. *See Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991); *Meyer v. Rigdon,* 36 F.3d 1375, 1378 (7th Cir.1994); *Sheerin v. Davis (In re Davis),* 3 F.3d 113, 114 (5th Cir.1993); *Hoskin v. Yanks (In re Yanks),* 931 F.2d 42, 43 n. 1 (11th Cir.1991).

■ According to the Eleventh Circuit Court of Appeals, if the prior judgment was rendered by a state court, the federal court must apply the collateral estoppel law of that state in the subsequent proceeding. *St. Laurent v. Ambrose (In re St. Laurent),* 991 F.2d 672, 675–76 (11th Cir.1993); *see* 28 U.S.C. § 1738; *see also Warda v. Commissioner of Internal Revenue,* 15 F.3d 533, 537 (6th Cir. 1994); *Intel Corp. v. Advanced Micro De-*

*vices, Inc.,* 12 F.3d 908, 914–15 (9th Cir. 1993); *Miller v. Apfel–Wilson (In re Apfel–Wilson),* 165 B.R. 939, 940 (Bankr. W.D.Wash.1994). Therefore, this Court must look to the law of the State of Georgia in order to determine the preclusive effect of the judgment entered against Gill in state court.

Georgia statutory law recognizes the conclusive effect of judgments by providing as follows:

> A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside.

O.C.G.A. § 9–12–40. Collateral estoppel in Georgia stems from this general principle of law, as state courts have used the conclusive nature of a judgment to preclude relitigation in a future court action of matters already put in issue and decided. In the process, Georgia courts have identified the existence of various prerequisites for the application of collateral estoppel in a later proceeding involving the same parties.

■ The first factor needed for collateral estoppel to apply is an attempt to readjudicate facts already adjudicated. *Department of Human Resources v. Fleeman,* 263 Ga. 756, 757, 439 S.E.2d 474 (1994); *Norris v. Atlanta & West Point R. Co.,* 254 Ga. 684, 685, 333 S.E.2d 835 (1985); *Oxendine v. Elliott,* 170 Ga.App. 422, 431, 317 S.E.2d 555 (1984); *Greene v. Transport Ins. Co.,* 169 Ga.App. 504, 504–05, 313 S.E.2d 761 (1984). In other words, the issue presently at stake must be identical to the one involved in the prior litigation. *Cf. Klosterman v. Tudor,* 170 Ga.App. 4, 5, 315 S.E.2d 920 (1984) (lack of identity among factual issues prevented application of collateral estoppel). A second prerequisite under Georgia law is that collateral estoppel applies only to matters that

were actually and necessarily litigated in the prior court proceeding. *Boozer v. Higdon,* 252 Ga. 276, 278, 313 S.E.2d 100 (1984); *Swinney v. Reeves,* 224 Ga. 274, 276, 161 S.E.2d 273 (1968); *Buie v. Waters,* 209 Ga. 608, 610, 74 S.E.2d 883 (1953); *Gregory v. J.T. Gregory & Son, Inc.,* 176 Ga.App. 788, 790, 338 S.E.2d 7 (1985); *see also Walton Motor Sales, Inc. v. Ross,* 736 F.2d 1449, 1455 (11th Cir.1984); *Samuel v. Baitcher (In re Baitcher),* 36 B.R. 588, 593 (Bankr. N.D.Ga.1983) (Kahn, C.J.). Finally, the party against whom the prior decision is asserted must have had a full and fair opportunity to litigate the issues in the earlier proceeding. *Winters v. Pund,* 179 Ga.App. 349, 352, 346 S.E.2d 124 (1986); *Watts v. Lippitt,* 171 Ga.App. 578, 579, 320 S.E.2d 581 (1984).[4]

■ After reviewing the evidence in the record pertaining to the state court action, the Court concludes that the necessary prerequisites for collateral estoppel under Georgia law are present. First, in order to determine whether the issues at stake in this dischargeability proceeding are identical to ones involved in the state court litigation, the Court takes note of Moore's counterclaim against Gill. Moore's cause of action against Gill was a state law claim founded upon fraudulent misrepresentations. Georgia law on this issue requires the following five elements: (1) a false representation by the defendant; (2) scienter; (3) intention to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; (5) and damage to the plaintiff. *Crawford v. Williams,* 258 Ga. 806, 806, 375 S.E.2d 223 (1989); *DCA Architects, Inc. v. American Bldg. Consultants, Inc.,* 203 Ga.App. 598, 601, 417 S.E.2d 386 (1992); *Weiderhold v. Smith,* 203 Ga.App. 877, 878, 418 S.E.2d 141 (1992); *see also Georgia–Pacific Corp. v. Lierberam,* 959 F.2d 901, 907 (11th Cir.1992). By bringing a claim for fraud against Gill, Moore necessarily put these factual allegations into issue in the state court action.[5]

---

**4.** The Court notes that these various prerequisites under Georgia law for the application of collateral estoppel are substantially similar to federal standards. *See RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1290 (5th Cir.1995); *Green-*

*blatt v. Drexel Burnham Lambert, Inc.,* 763 F.2d 1352, 1360 (11th Cir.1985).

**5.** A review of Moore's counterclaim reveals that it contained allegations of the necessary elements for fraud.

The jury verdict and resulting judgment in favor of Moore establish that each of these facts were adjudicated to the detriment of Gill. As will be discussed later in this Order, Moore's cause of action in this adversary proceeding under 11 U.S.C. § 523(a)(2)(A) involves these same issues. Therefore, the doctrine of collateral estoppel will prevent Gill from relitigating these factual issues.

With regard to the second requirement, Gill argues that it is impossible to determine what issues actually were litigated in the state court. As such, she contends that this Court cannot apply collateral estoppel. The Court does not agree. In Count II of his counterclaim, Moore specifically raised the allegations of fraud. When the jury reached its verdict at the end of a two week trial, it expressly found that Gill was liable to Moore on his Count II fraud claim. This evidence undeniably establishes that the matters pertaining to fraud were actually and necessarily litigated in the state court. Furthermore, it is clear that Gill was afforded a full and fair opportunity to litigate these issues in the state court as she was represented by counsel and participated in several years of litigation before the matters were finally decided after a two week trial before a jury. Therefore, the Court concludes that all the necessary requirements for the application of collateral estoppel are present in this proceeding.

■ Before turning to the question of dischargeability, however, the Court will briefly respond to the counter arguments raised by Gill. She argues that summary judgment is not proper in this proceeding since more than one reasonable conclusion could have been made based upon the evidence presented at trial. This argument has no merit and completely contradicts the purposes of the doctrine of collateral estoppel. The mere possibility that another trier of fact could have ruled in Gill's favor does not entitle her to relitigate issues in one forum that have already been decided in another. A final decision on the facts has been made in the state court, and this Court is bound to follow that decision.

Gill also contends that the findings of the jury in the state court are void because they are contrary to the court's instructions, incomplete, and ambiguous. Once again, the Court finds no merit in these arguments. There is nothing ambiguous or incomplete about the jury's verdict. It clearly finds in favor of Moore on his fraud claim against Gill. Moreover, these arguments were made to and rejected by the state court in Gill's motion for a new trial. By making such arguments in this proceeding, Gill, in effect, wants the Court to review the decisions of the state court and the findings of the jury. This Court, however, has no authority to make such a review. Federal bankruptcy courts do not act as appellate courts of the state courts. *See, e.g., Rogers v. Overstreet (In re Rogers)*, 164 B.R. 382, 390 (Bankr. N.D.Ga.1994) (Drake, J.) (refusing to review and modify state court child support decree). The fact that Gill is unhappy with the treatment she received in the state trial court does not allow her to come running to a federal court seeking relief from an otherwise valid judgment.[6] *See generally Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). It is unrealistic for her to expect this Court to hear all the evidence and relitigate all the issues as to matters already adjudicated by the state court. This Court does not wish to do so, and it is clear it does not have the legal authority to do so.

■ The Court notes that if Gill is displeased with the results of the state trial court, the remedies she seeks can be obtained by appealing through the state court system. In fact, she already has appealed the denial of her motion for a new trial, and that matter currently is pending before the Georgia Court of Appeals. The mere fact, however, that a matter may be pending on appeal does not prevent the application of collateral estoppel under Georgia law in another proceeding. *See* O.C.G.A. § 9–12–40; *Davis v. First of Georgia Ins. Managers, Inc.,* 171 Ga.App. 347, 349, 319 S.E.2d 517 (1984); *McDonald v. Hester,* 115 Ga.App.

6. Only the United States Supreme Court can review a decision of a state's highest court, and its role is limited to hearing only matters that concern federal laws and rights.

740, 741, 155 S.E.2d 720 (1967); *see also Hawkins v. Risley*, 984 F.2d 321, 324 (9th Cir.1993); *Jaffree v. Wallace*, 837 F.2d 1461, 1466–67 (11th Cir.1988). An undecided appeal does not otherwise effect a judgment's finality. Until the judgment in question is reversed or set aside by an appellate court, this Court is precluded from relitigating issues already adjudicated in the state court.[7]

### C. Dischargeability

■■■■■ Collateral estoppel bars a federal court from relitigating factual issues already decided in the state court. The ultimate issue of dischargeability, however, is a legal question which is to be addressed by this Court, as a federal bankruptcy court, in the exercise of its jurisdiction to determine exceptions to discharge. *St. Laurent*, 991 F.2d at 676; *Halpern v. First Georgia Bank (In re Halpern)*, 810 F.2d 1061, 1064 (11th Cir. 1987). At the outset, the Court notes that general policy considerations dictate that exceptions to discharge be construed strictly against the creditor and liberally in favor of the honest debtor. *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1163 (11th Cir.1995); *Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir.1986); *see, e.g., Bailey v. Chatham (In re Bailey)*, 171 B.R. 703, 706 (Bankr.N.D.Ga.1994) (Drake, J.). Moreover, Moore, as the objecting party, carries the burden of proving, by a preponderance of the evidence, that the debt in question is excepted from discharge. *Grogan*, 498 U.S. at 291, 111 S.Ct. at 661; *St. Laurent*, 991 F.2d at 677.

■■■■ Moore objects to the discharge of the debt in question by relying upon section 523(a)(2)(A) of the Bankruptcy Code, which provides as follows:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A). In order to succeed under this provision, a creditor has the burden of proving the following requirements:

(1) the debtor made a false representation with intent to deceive the creditor, (2) the creditor relied on the representation, (3) that his reliance was reasonably founded, and (4) that the creditor sustained a loss as a result of the representation.

*St. Laurent*, 991 F.2d at 676.

As discussed earlier in this Order, the state court jury trial adjudicated the facts necessary to establish fraud under Georgia law. The doctrine of collateral estoppel demands that this Court accept such facts in this discharge proceeding. Facts specifically settled by the state court are: (1) Gill knowingly made false representations to Moore with the intention of deceiving and inducing Moore to act; and (2) Moore justifiably relied upon such representations when acting and suffered damages as a result. These factual findings are sufficient to establish fraudulent conduct under 11 U.S.C. § 523(a)(2)(A). *Note Grogan*, 498 U.S. at 290, 111 S.Ct. at 661 (all fraud claims successfully reduced to judgment should fall within exception to discharge). As such, Gill's debt to Moore arising from her fraudulent conduct cannot be discharged through her Chapter 11 bankruptcy.

■■■■ It is worth noting that the state court judgment is not entirely clear about Gill's actual knowledge in defrauding Moore.[8] Instead, her liability stems, in the very least, from a partnership among Gill, Vaughan, and Wade. Any fraudulent acts committed by Vaughan or Wade were imputed to Gill.

---

7. Should the Georgia Court of Appeals later reverse the state court judgment, equity would require this Court to allow Gill to seek to reopen this proceeding to determine whether it is appropriate to vacate the judgment entered here.

8. The Court notes that the state court complaint alleged active participation on the part of Gill in the conspiracy to defraud Moore. As such, it is likely that the jury verdict in favor of Moore establishes this particular fact.

Theoretically, it is possible that Gill did not actively participate in the fraudulent conduct herself, or even have knowledge of it. Nevertheless, such an assumption, even if true, does not change the conclusion as to dischargeability. For purposes of section 523(a)(2)(A), this Court does not find it necessary to make a distinction between active fraud and fraud imputed by the acts of a partner. The imputed fraud of the one partner is sufficient to create a debt that is excepted from discharge in another partner's bankruptcy. *BancBoston Mortgage Corp. v. Ledford (In re Ledford)*, 970 F.2d 1556, 1561–62 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1272, 122 L.Ed.2d 667 (1993); *Luce v. First Equipment Leasing Corp. (In re Luce)*, 960 F.2d 1277, 1281–85 (5th Cir. 1992); *FDIC v. Calhoun (In re Calhoun)*, 131 B.R. 757, 760–62 (Bankr.D.D.C.1991); *see also W–V Enterprises v. Croft (In re Croft)*, 150 B.R. 955, 959 (Bankr.E.D.Mo. 1993) (debt obtained through fraudulent conduct of debtor's agent is excepted from discharge). Such a legal principle has been recognized for over one hundred years, *see Strang v. Bradner*, 114 U.S. 555, 5 S.Ct. 1038, 29 L.Ed. 248 (1885), and it is particularly appropriate to apply it where, as here, the "innocent" partner benefitted from the other partner's fraud.[9] Therefore, the Court concludes that it is proper to exclude from Gill's discharge her debt to Moore arising from fraud.

### CONCLUSION

Under the doctrine of collateral estoppel, the Court will respect and give full credit to the matters pertaining to fraud already adjudicated by the Superior Court of Lamar County, Georgia. These indisputable facts from the state court proceeding establish the necessary elements of fraud within the meaning of 11 U.S.C. § 523(a)(2)(A). As such, Gill cannot discharge through bankruptcy her $238,500.00 judgment debt to Moore. Accordingly, Moore's Motion for Summary judgment is hereby **GRANTED**. The Court

shall enter a separate judgment in favor of the plaintiff Jere F. Moore.

**IT IS SO ORDERED.**

---

9. Gill benefitted from the fraud to the extent the partnership actively and successfully competed against Moore after he purchased B & R Tires from Vaughan. Also, the evidence in the state court established that she commingled partnership funds with her personal account.