In re Sherry Freeman WILLIAMS, Debtor.

Judy Lusk, Plaintiff,

v.

Sherry Freeman Williams, Defendant.

Bankruptcy No. R01–40468–CRM.
Adversary No. R01–04047–CRM.

United States Bankruptcy Court,
N.D. Georgia,
Rome Division.

Aug. 22, 2002.

G. Frank Nason, IV, Stuart F. Clayton, Jr., Lamberth, Cifelli, Stokes & Stout P.A., Atlanta, GA, for plaintiff.

Leon S. Jones, Jones & Walden LLC, Atlanta, GA, for defendant.

## ORDER

COLEMAN RAY MULLINS,
Bankruptcy Judge.

**THIS MATTER** is before the Court on the Plaintiff's Motion for Judgment on the Pleadings (the "Motion"). Judy Lusk (the "Plaintiff") seeks a determination that an $850,000 judgment debt owed by Sherry Freeman Williams (the "Debtor") is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6) (the "Bankruptcy Code"). The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157(a), 28 U.S.C. § 157(b)(1) and 28 U.S.C § 1334(b), and it is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

The question presented is whether the doctrine of collateral estoppel or issue preclusion applies and entitles the Plaintiff to a judgment on the pleadings or, in the alternative, summary judgment on her non-dischargeability complaint (the "Complaint"). After considering the Motion, the parties' briefs and oral arguments, the Court concludes that Plaintiff is entitled to summary judgment.

On July 22, 1998, the Plaintiff filed suit against the Debtor and three corporate entities he controlled in the Superior Court of Whitfield County, Georgia (the "state court"). The Plaintiff made claims for breach of fiduciary duty, fraud, corporate dissolution and sale of assets, conversion, attorney's fees and expenses, and commissions owed. After a three day jury trial, the state court judge charged the jury on the issue of fraud. Whitfield County Trial Transcript, pg. 397–9. The state court judge also charged the jury on breach of fiduciary duty as follows:

A director and/or an officer shall discharge his or her duties as a director and/or officer in a manner he or she believes in good faith to be in the best interest of the corporation and with the care an ordinarily prudent person in a like position would exercise under similar circumstances.

Corporate officers and directors occupy a fiduciary relationship to the corporation and its stockholders and are held to be—and are held to the standard of utmost good faith and loyalty.

The good faith imposed on corporate directors and officers requires that stockholders be treated fairly and their investments be protected because in close corporations minority stockholders may easily be reduced to relative insignificance and their investment rendered captive.

Whitfield County Trial Transcript, pp. 399. In addition to the charge, the state court judge submitted a special verdict form to the jury. There was no objection by the parties to either the jury charge or the special verdict form. Whitfield County Trial Transcript, pg. 405. The jury re-

turned the special verdict form, which read as follows:

2. Do you find that fraud has been committed against Judy Lusk?

[a. Yes.]

If your answer is yes please state which Defendants you find committed fraud.

[a. All Defendants]

3. Please state the amount of damages awarded.

[a. $450,000.00 General Damages and $0.00 Loan Repayment]

4. Do you wish to award punitive damages?

[a. Yes.]

If yes, against whom?

[a. Sherry Williams]

An addendum to the verdict form awarded the Plaintiff $400,000.00 in punitive damages. In sum the jury issued a special verdict in favor of the Plaintiff in the amount of $850,000.00 (the "Verdict").

After entry of the Verdict, the state court entered judgment against the Debtor (the "Judgment"), which states in pertinent part:

WHEREAS, the jury found that fraud was committed against Plaintiff by Sherry Williams; and

WHEREAS, the jury returned a verdict in favor of Plaintiff against all Defendants in the amount of Four Hundred, Fifty Thousand Dollars ($450,000.00); and

WHEREAS, the jury further awarded punitive damages in favor of the Plaintiff against Sherry Williams in the amount of Four Hundred Thousand Dollars ($400,000.00);

Plaintiff shall have judgment against Sherry Williams individually and d/b/a Airtex of Dalton, Airtex of Dalton, Inc., Bellemeade, Inc. and Textile Concepts, Inc. in the amount of Four Hundred Fifty Thousand Dollars ($450,000.00). Furthermore, Plaintiff is awarded the additional sum of Four Hundred Thousand Dollars ($400,000.00) against Sherry Williams individually.

Following entry of the Judgment, the Debtor filed his Motion for New Trial and Judgment Notwithstanding the Verdict (the "JNOV Motion"), contending that the verdict was legally insufficient.

On March 5, 2001, Debtor filed a petition under Chapter 11 of the Bankruptcy Code, scheduling the debt owed to the Plaintiff as a non-priority unsecured disputed claim for $850,000.00. As a result, the JNOV Motion remains pending in the state court. Plaintiff contends that the doctrine of collateral estoppel precludes relitigation of the dischargeability of the debt arising from the Judgment, pursuant to section 523(a)(2)(A) of the Bankruptcy Code.

The Debtor contends that collateral estoppel is not applicable because (1) the pending JNOV Motion negates the finality of the Judgment, (2) the Judgment did not apportion the damages against the Debtor among the various counts, (3) the alleged malpractice of Debtor's trial counsel denied the Debtor a full and fair opportunity to litigate the claims, and (4) the Judgment is contrary to Georgia law.

The Plaintiff seeks judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, as incorporated by Rule 7012 of the Federal Rules of Bankruptcy Procedure. Rule 12(c) provides

[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall

be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

The Motion relies entirely upon the allegations and exhibits in the Complaint and the Debtor's Answer. The Debtor, in response, filed a number of documents not contained in the pleadings. Accordingly, the Court will treat Plaintiff's motion as one for summary judgment[1].

Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, enumerates criteria that the moving party must meet in support of a motion for summary judgment. To prevail, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Ultimately, the movant bears the burden of demonstrating all elements of the cause of action and the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Once the movant meets that burden, the opposing party must go beyond the pleadings and bring forth specific facts to establish there is a genuine issue for trial.

*Matsushita Electric Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

While the Complaint seeks relief pursuant to sections 523(a)(2)(A), 523(a)(4) and 523(a)(6) of the Bankruptcy Code, the Motion is limited to section 523(a)(2)(A). Section 523(a)(2)(A) precludes a discharge of debts "for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

> Courts have generally interpreted § 523(a)(2)(A) to require the traditional elements of common law fraud. A creditor must prove that: (1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation.

*In re Bilzerian*, 153 F.3d 1278, 1281 (11th Cir.1998). The Court turns first to the substantive application of collateral estoppel, and then to the Debtor's arguments concerning the validity of the Judgment.

In *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), the Supreme Court held that the doctrine of collateral estoppel could be used to foreclose the relitigation of issues previously determined in state court[2]. In applying

---

1. Litigants are generally required to comply with the procedural requirements of the Local Rules of Practice for the United States Bankruptcy Court for the Northern District of Georgia ("BLR"), Rule 7056–1 in connection with summary judgment motions pursuant to Rule 56 of the Federal Rules of Civil Procedure. However, in this case, the controversy between the parties is narrowly centered around the meaning of undisputed, valid and authentic state court pleadings and record. Accordingly, for the purpose of ruling on the

instant motion, the Court finds that the state court materials presented by the parties are undisputed and waives the procedural requirements under BLR Rule 7056–1.

2. The doctrine of res judicata is commonly known as "claim preclusion." Res judicata prohibits the re-litigation of claims which were previously decided or could have been previously decided in a prior proceeding. In other words, a holding in a prior case is substantively determinative of the merits in a

the doctrine of collateral estoppel, a bankruptcy court must "look to the law of the State in which [a] judgment was rendered in order to determine its preclusive effect." *In re Brownlee*, 83 B.R. 836, 838 (Bankr. N.D.Ga.1988). Under Georgia law collateral estoppel precludes relitigation of an issue where the "issue of fact or law is actually litigated and determined by a valid judgment, and the determination is essential to the judgment. That determination is then conclusive in a subsequent action between the same parties." *Kent v. Kent*, 265 Ga. 211, 452 S.E.2d 764 (1995). Furthermore, "the central issue in determining whether the doctrines of res judicata and collateral estoppel apply is whether the party against whom the plea is raised has had full opportunity to litigate the issues." *Winters v. Pund*, 179 Ga.App. 349, 352, 346 S.E.2d 124 (1986); *Watts v. Lippitt*, 171 Ga.App. 578, 579, 320 S.E.2d 581 (1984). Hence, the five elements for the application of collateral estoppel under Georgia law are (1) identity of parties or their privies; (2) identity of issues; (3) actual and final litigation of the issue in question; (4) essentiality of the adjudication to the earlier action; and (5) full and fair opportunity to litigate the issues in question.

■ There is no dispute that the parties in the state court action and the instant adversary proceeding are identical. Accordingly, the Court finds the Judgment satisfies the identity of parties prong.

■ "The tort of fraud under Georgia law requires: (1) a false representation made by the defendant; (2) which the defendant knew was false; (3) made with an intent to deceive the plaintiff; (4) justifiable and detrimental reliance by the plaintiff on such representation; and (5) damages suffered by the plaintiff as a result." *Sterling Factors, Inc. v. Whelan*, 245 B.R. 698, 705 (N.D.Ga.2000). Moreover, the requirements for a fraud claim under Georgia law are sufficiently identical to the elements required for a showing of fraud pursuant to section 523(a)(2)(A) of the Bankruptcy Code to meet the second prong of the collateral estoppel test. *Id.* at 705–706. The Verdict and Judgment specifically state that the Debtor is liable for fraud under Georgia law. Accordingly, the Court finds the identity of issues prong satisfied.

■ Georgia case law does not disclose any analytical framework for determining whether a matter was actually litigated. However, "[a]s a general rule, when a question of fact is put in issue by the pleadings, is submitted to the trier of fact for its determination, and is determined, that question of fact has been 'actually litigated.'" 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 132.03[2][c] (3d ed.1999). The Debtor challenges the actual and final litigation of the issue of fraud. Debtor argues that the Judgment is not final because of the pending JNOV Motion. In support, Debtor cites *Thomas v. Brown*, 708 F.Supp. 336 (N.D.Ga.1989). In *Thomas*, the district court denied the application of res judicata to a prior state law judgment, holding that under Georgia law "a judgment is suspended when an

subsequent case. In *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the Supreme Court held that litigants could not preclude the litigation of bankruptcy dischargeability claims by relying upon state court judgments.

Collateral estoppel, or "issue preclusion" differs from res judicata in that it does not bar adjudication of the ultimate merits of a claim. Instead, it only precludes re-litigation of discrete issues which have a bearing on the outcome of subsequent cases. So an issue which was decided in a prior case need not be re-litigated in a subsequent case, but the prior determination of that issue is not ultimately dispositive of the underlying claim.

appeal is entered within the time allowed .... and the judgment is not final as long as there is a right to appellate review." *Id.* at 338 (citing *Lexington Developers, Inc. v. O'Neal Construction Co., Inc.,* 143 Ga.App. 440, 238 S.E.2d 770 (1977)); *see also Greene v. Transport Insurance Co.,* 169 Ga.App. 504, 313 S.E.2d 761 (1984) (ruling, in reliance on *Lexington Developers,* that collateral estoppel could not be applied to a judgment subject to appeal).

Plaintiff cites *Matter of Gill,* 181 B.R. 666, 671 (Bankr.N.D.Ga.1995), for the proposition that the pendency of a motion for new trial does not alter a judgment's collateral estoppel effect. In *Gill,* the Court applied the doctrine of collateral estoppel in spite of a pending appeal on an allegedly preclusive prior state court judgment. *Id.* at 672–73. The Debtor criticizes *Gill,* and notes that the authority cited therein did not support the application of collateral estoppel. However, in *Pope v. Shipp,* 38 Ga.App. 483, 144 S.E. 345 (1928), a case not cited by the Court in *Gill,* the Georgia Court of Appeals held

> [a] judgment of a court stands with full force and efficacy until it has been reversed or set aside. The mere pendency of a motion for a new trial can in no way affect the force and efficacy of the judgment to which the motion relates. It follows that an amendment offered by the plaintiff, in which a certain judgment between the same parties in a former litigation is pleaded as res judicata of certain defenses pleaded by the defendant, did not fail to constitute a good and sufficient plea of res judicata by reason of its appearing that a motion for a new trial, to set aside the judgment

pleaded, was still pending and undisposed of.

*Id.* at 346 [3]. It seems that the Georgia courts are split on the question of whether a judgment subject to appeal may be granted preclusive effect under the doctrine of collateral estoppel. To resolve this contradiction, the Court looks to the purposes of the collateral estoppel doctrine and the effect of its application in this case.

Collateral estoppel is "a procedure for carrying out the public policy of avoiding repetitious litigation." *Partmar Corp. v. Paramount Pictures Theatres Corp.,* 347 U.S. 89, 91, 74 S.Ct. 414, 416, 98 L.Ed. 532 (1954). In the instant case, the issue of whether the Debtor committed fraud was fully adjudicated during the three day state court jury trial. Relitigation of this issue would be a repetitious tax on the resources of the parties and the Court. Therefore, the application of collateral estoppel in this case serves the primary policy goal underlying the doctrine.

Still, the Court does not turn a blind eye to the impact of collateral estoppel upon the Debtor. The Debtor's right to contest the merits of the Judgment in the state court have been completely preserved by the pending JNOV Motion. Furthermore, Rule 60(b)(5) of the Federal Rules of Civil Procedure, which is expressly incorporated into bankruptcy proceedings by Rule 9024 of the Federal Rules Bankruptcy Procedure, allows a bankruptcy court to relieve a litigant from a final judgment, order, or proceeding if "the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated." Therefore, the Debtor's right to contest the dis-

---

3. The Court notes that the Georgia courts interchangeably apply the concept of finality in both res judicata and collateral estoppel doctrine. *See Greene,* 313 S.E.2d at 763, 169 Ga.App. at 506. Accordingly, the *Pope* court's finality holding, although rendered in the context of res judicata, is applicable to the collateral estoppel issue in the instant case.

chargeability of the debt owed to the Plaintiff is fully preserved in the event he successfully challenges the Judgment.

The Court finds that the issue of Debtor's fraud was adjudicated and that the pending JNOV Motion does not defeat the finality of the Verdict and Judgment for collateral estoppel purposes. Accordingly, the Court deems the issue of the Debtor's fraud actually litigated in satisfaction of the third collateral estoppel prong.

The Debtor also contends that the Judgment should not be given preclusive effect because the Verdict and Judgment fail to specifically attribute damages to the fraud counts of the Complaint.

> Just as a normal civil proceeding consists of the two elements, liability and damages, so an adversary proceeding respecting dischargeability consists of three elements, liability, damages, and dischargeability. A non-bankruptcy court may consider the issues of liability and damages, but it may not rule on the question of dischargeability. In a personal injury case the non-bankruptcy court may determine liability, damages, and willfulness, but it cannot establish dischargeability or nondischargeability. The Bankruptcy Court, however, may adopt the findings of the non-bankruptcy court where they have been litigated fully. Thus a Bankruptcy Court might apply offense collateral estoppel on the issue of liability, or on the issues of liability and damages, or on the issues of liability, damages, and willfulness, depending on the extent to which those issues were litigated in the prior action, but the Bankruptcy Court would still have to determine on the basis of those proven facts whether or not those acts come within § 523(a)(2), (4) or (6).

*Sterling Factors*, 245 B.R. at 708 (citing *In re Magnafici*, 16 B.R. 246, 252–53 (Bankr. N.D.Ill.1981)). The Court separately analyzes the essentiality of the state court's finding of fraud on the issues of liability and damages.

Although the Debtor takes issue with the legal validity of the Verdict and Judgment, the parties do not dispute the language of the Verdict and Judgment as they have been presented to the Court. Further, the language in these documents finding the Debtor liable for fraud is beyond controversy. Accordingly, as to liability, the Court concludes that the state court's finding of fraud against the Debtor essentially determined the identical issue of Debtor's fraud under section 523(a)(2)(A).

 Debtor argues that the state court did not adequately distinguish between the causes of action in apportioning the damages awarded. "If [a] judgment fails to distinguish as to which of two or more independently adequate grounds is the one relied upon, it is impossible to determine with certainty what issues were in fact adjudicated, and the judgment has no preclusive effect." *In re St. Laurent*, 991 F.2d 672, 677 (11th Cir.1993). The Debtor contends, therefore, that it is impossible to determine the extent to which damages were awarded on account of Defendant's fraud as opposed to other counts of the Complaint, and therefore the Court must try the issue of damages apportionment. The Court disagrees.

The language in the Verdict and Judgment, standing alone, is sufficient for a determination that the state court attributed all damages to the fraud liability. Neither the Verdict nor the Judgment reveal any liability other than that for fraud. Had the jury not returned a verdict for fraud, and fraud alone, the verdict form would have been insufficient to adjudge any other liability. Therefore, the Court concludes the Judgment is based exclusive-

ly on the Debtor's fraud and that such fraud was essential to the entire damages award.

The Debtor notes that the state court charged the jury on all the counts in the Complaint. However, this fact supports the Plaintiff's position. The Court is mindful of the concept of "expressio unius est exclusio alterius" or "the expression of one thing is the exclusion of another." The state court's charge on multiple counts of the Complaint demonstrates complete awareness of all the Plaintiff's allegations. Yet the only specific finding of liability was for fraud. Therefore, it seems the state court specifically adjudicated the issue of fraud and intentionally omitted any findings on other counts. Accordingly, the Court concludes the Verdict and Judgment were rendered solely for fraud, and that the Debtor's fraud was essential to all awarded damages.

Even if the face of the Verdict and Judgment, standing alone, insufficiently apportioned damages, the Court would still conclude that all of the damages were attributable to the Debtor's fraudulent conduct. The Bankruptcy Court for the Southern District of Georgia, in *In re Hooks,* 238 B.R. 880 (Bankr.S.D.Ga.1999), held as much in a similarly postured case. The *Hooks* court applied the doctrine of collateral estoppel to a state law default judgment on four substantively tortious counts including fraud. When the Debtor raised the issue of damages apportionment, the court noted

> the question of apportionment of damages among several claims is a common issue, since it is unusual to bring a suit for fraud alone. Fraud would necessarily occur in a context that would give rise to other claims such as breach of contract or conversion.... The default judgment against Mr. Hooks explicitly "included fraud." Therefore, the fact

that it was made in satisfaction of three other claims as well does not prevent the application of collateral estoppel.

*Id.* at 886.

Moreover, *Hooks* relied on the implicit holding of the Eleventh Circuit Court of Appeals on the issue of apportionment in *St. Laurent. Hooks,* 238 B.R. at 885–86. In *St. Laurent,* the debtor was found liable in state court for breach of contract, breach of warranty and fraud. 991 F.2d at 675. The state court made a general damage award of $48,705.22 in compensatory damages and $50,000.00 in punitive damages. *Id.* The debtor subsequently filed bankruptcy and the plaintiffs sought a determination that the judgment debt was non-dischargeable. *Id.* The bankruptcy and district courts applied collateral estoppel to preclude further litigation of fraud liability. *Id.* The Eleventh Circuit affirmed. *Id.* In particular the Eleventh Circuit adjudged the state court fraud finding, the only tortious aspect of the state court action, essential to the award of punitive damages. *Id.* at 676.

While the foregoing reasoning would require the full attribution of all punitive damages to the Debtor's fraud, the Court also ruled "the purely compensatory component of a debt arising from actual fraud is not dischargeable in bankruptcy. The compensatory aspect of the judgment against [the debtor] is exempt from discharge under § 523(a)(2)(A)." *Id.* at 677. The compensatory damages against the debtor in *St. Laurent* were based on two non-tortious counts in addition to fraud. However, the Circuit Court did not require apportionment. Accordingly, it appears the Eleventh Circuit implicitly held that the application of collateral estoppel would not be barred by the failure of a prior judgment, based in part on fraud, to apportion damages.

The court in *In re Bukowski*, 266 B.R. 838 (E.D.Wis.2001), analyzed the apportionment issue in the context section 523(a)(6) of the Bankruptcy Code. The plaintiff obtained a judgment against the debtor for breach of contract, promissory estoppel, unjust enrichment and breach of fiduciary duty. *Id.* at 841. In the subsequent dischargeability proceeding, the debtor argued that collateral estoppel should not apply because the damages were not apportioned between the dischargeable claims and the non-dischargeable claims. *Id.* at 846.

■■■ The court declined the debtor's invitation to require specific apportionment, noting

> [plaintiff's] allegations are simple: that [debtor] prevented him from receiving benefits to which he was legally entitled. Both the compensatory and punitive damage awards were based on this conduct. The jury's award of punitive damages was judgment that such conduct was willful and malicious. Thus, none of this award is dischargeable.

*Id.* In other words, if a debtor's conduct violates section 523, then the mere fact that the conduct also gives rise to causes of action beyond the purview of section 523 is not fatal to the essentiality prong of collateral estoppel. Instead, all damages flowing from the debtor's misconduct are attributable thereto.

The Court finds that the failure of the state court to apportion damages does not preclude the application of collateral estoppel. The Plaintiff alleged several counts of tortious misconduct including fraud and the jury returned the Verdict, establishing the fraudulent nature of the Debtor's conduct. Even if the jury intended to adjudge liability on grounds other than fraud, all damages in the case flowed from the Debtor's fraudulent course of conduct. Therefore, the essentiality prong is not undermined by the presence of other counts in the Complaint.

The cases cited by the Debtor are not persuasive on the subject issue. First, the Debtor cites *In re Gunnin*, 227 B.R. 332 (Bankr.N.D.Ga.1998), for the proposition that the jury charges are controlling on the issue of essentiality. In *Gunnin*, the Court concluded, from the jury charges and a general verdict in a state court suit, that collateral estoppel could be applied in the context of section 523(a)(2)(A) of the Bankruptcy Code. 227 B.R. at 335. *Gunnin* did not hold that jury charges are dispositive on a collateral estoppel element. Moreover, the charges in *Gunnin* were particularly important to the analysis because the jury rendered a general verdict against the debtor. While jury charges are properly considered by the Court they should still be considered in the broader context of the case. In this case, to make the charges controlling would eviscerate the express findings in the Verdict and Judgment.

The Debtor also relies on *Gill* for the proposition that the verdict form should have included more specific interrogatories. The *Gill* court relied on language in a state court judgment which specifically apportioned damages to a fraud count against the debtor. 181 B.R. at 669. However, the fact that such a verdict form was helpful in a particular case is not indicative ·of whether the forms used in this case were sufficient.

The only articulated finding of liability in the state court is on the basis of fraud. In the absence of any state court findings which evidence another basis of liability, the Court attributes all of the judgment debt to the Debtor's fraud. Furthermore, the Debtor's fraudulent course of conduct was the basis for the state court award of damages. Accordingly, the Court rules

that the state court's finding of fraud against the Debtor was essential to its award of damages in satisfaction of the fourth collateral estoppel prong.

 The full and fair opportunity prong of the collateral estoppel test is rooted in due process concerns. "Out of fairness, a party to an action should not later be prohibited in a second action from protesting an issue which he or she could not properly address in the first action." 5 THOMAS C. RAWLINGS, GEORGIA PROCEDURE, CIVIL § 6:30. Therefore, for purposes of collateral estoppel, the key to full and fair opportunity analysis is determining whether the party had adequate notice of the issue and was afforded the opportunity to participate in its determination.

 The Debtor does not claim he was denied proper notice of the fraud issue. Also, the Debtor does not claim he was afforded less than a full right to participate in the adjudication of the fraud issue in state court. The Debtor claims that he was denied a full and fair opportunity to litigate because his attorney committed malpractice. However, an attorney's malpractice is not a per se denial of a full and fair opportunity to litigate. Debtor cites *Richardson v. Miller*, 101 F.3d 665 (11th Cir.1996), for the proposition that "a party's inadequate representation by trial counsel means that such party was not provided a full and fair opportunity to contest the decision in the prior action." Debtor's Response Brief at pg. 4. However, in *Richardson*, the defendant's counsel was retained by a third party co-defendant. The co-defendant was dismissed from the suit and defense counsel failed to appear at trial, forcing the defendant to proceed without representation of any kind.

The Eleventh Circuit held

Richardson lacked the opportunity to retain new counsel and appeared at trial without counsel. Therefore, it appears that Richardson may not have been provided a full and fair opportunity to contest the decision in the prior action. While we join the other Circuits who have considered the problem of applying the doctrine of collateral estoppel **when the party being estopped lacked counsel** and was not provided a full and fair opportunity to contest the prior action, we elect to remand this case for a further hearing before the district court rather than merely directing that the case be tried.

*Id.* at 669 (emphasis added). It seems that the dispositive issue for the Eleventh Circuit was the complete absence of counsel, rather than counsel's competence. Moreover, even though the defendant did not have the benefit of a lawyer at trial, the Eleventh Circuit remanded the case for further determination as to whether or not the defendant was afforded a full and fair opportunity to litigate the initial action[4].

The Court holds that the Debtor had a full and fair opportunity to participate at trial. If the Debtor was injured by his counsel's breach of the professional standard of care, he clearly has a remedy. Therefore, the Court holds that the full and fair opportunity prong for application of collateral estoppel has been satisfied.

The Debtor refers to a number of alleged legal deficiencies in the Verdict and Judgment. The Court does not comment on the merits of these arguments. The Court does not have the authority to re-

---

4. The Court notes that *Richardson* was decided under South Carolina collateral estoppel law, not Georgia law. For this further reason, the Court is not bound by *Richardson*.

view the decisions of the state court and the findings of the jury because "Federal bankruptcy courts do not act as appellate courts of the state courts." *Gill*, 181 B.R. at 672. While the Court offers no ruling on any of these substantive state law arguments, the Debtor is free to pursue the claims via the Georgia appellate process.

### CONCLUSION

The Court finds, as a matter of undisputed fact and law, that the parties actually litigated in state court the identical issue of the Debtor's fraud under section 523(a)(2)(A) of the Bankruptcy Code. Furthermore, the Court concludes that the state court's finding of fraud was essential to both the Debtor's liability and the entire award of damages. Finally, the Court holds that the Debtor had a full and fair opportunity to litigate the issue of fraud in state court. Therefore, the Court applies the doctrine of collateral estoppel and grants summary judgment in favor of the Plaintiff on the issue of Debtor's fraud under section 523(a)(2)(A). Debtor's conduct being adjudged fraudulent pursuant to section 523(a)(2)(A), the debt arising from the Judgment in favor of Plaintiff is deemed non-dischargeable.

For all the foregoing reasons,

**IT IS ORDERED AND ADJUDGED** that Plaintiff's Motion for Judgment on the Pleadings be and is hereby **GRANTED;** and it is

**FURTHER ORDERED AND ADJUDGED** that the indebtedness on which Plaintiff's claim is based is **EXCEPTED FROM DISCHARGE** pursuant to section 523(a)(2)(A) of the Bankruptcy Code.

The Clerk's office is directed to serve a copy of this Order upon the Plaintiff and the Debtor.